SARAH R. HACOBIAN, ESQ. (SBN 340443)
SRH Law Group, APC
440 Western Ave. Suite 205
Glendale, CA 91201
Telephone: (818) 669-8522
SRHlawgroup@outlook.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **HEGHINE MARTIROSYAN,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**TODD LYONS, Acting Director, Immigration and Customs Enforcement, Warden, Adelanto ICE Processing Center, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, FIELD OFFICE DIRECTOR, ICE Enforcement and Removal Operations, Los Angeles, and DOES 1-10, in their official capacities,**<br><br>**Respondents.** | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241), AND REQUEST FOR IMMEDIATE RELEASE** |

## INTRODUCTION

1. Petitioner Heghine Martirosyan ("Petitioner") seeks a writ of habeas corpus challenging her sudden and unlawful re-detention by U.S. Immigration and Customs Enforcement ("ICE") after nearly twelve years of liberty in the United States.

2. Petitioner is a native and citizen of Armenia who arrived at the San Ysidro Port of Entry on or about November 1, 2014. Her Notice to Appear expressly alleges that she was thereafter **paroled by an immigration officer**. (Exh. B.)
3. Contemporaneous ICE records independently confirm that on November 1, 2014, Petitioner was **released from immigration custody on parole with reporting requirements**. The Notice of Release identifies her release as "Parole with Reporting Requirements," and the accompanying ICE document confirms that she was "[r]eleased from ICE custody" and "[p]aroled pursuant to 8 CFR 212.5." (Exh. C.)
4. Following that release, Petitioner lived in the United States for nearly twelve years.
5. During that extraordinary period of liberty, Petitioner established a home, family, and deep community ties in Southern California.
6. Petitioner has **no criminal record whatsoever**. She has never been convicted of a crime, has no pending criminal charges, and has no criminal arrest history.
7. Petitioner is married to a United States citizen, Robert Asatryan. The couple has a fifteen-year-old child from her previous relationship. Petitioner's husband describes her as an essential part of the household and the person upon whom the family depends for the child's daily care, emotional support, and stability. (Exh. D.)

8. Petitioner has also been a member of Lighthouse for the Nations church for more than ten years and has been heavily involved in the church community. Her pastor confirms that she has developed deep and longstanding community ties. (Exh. D.)
9. Petitioner has also received employment authorization from the United States Government, presently valid through January 13, 2030. (Exh. E.)
10. Petitioner does not have a final order of removal.
11. Further, according to the EOIR case-status information available to Petitioner, her immigration proceedings were terminated by the Immigration Judge in or about May 2026.
12. Nevertheless, on or about September 8, 2026, immigration authorities suddenly took Petitioner back into custody.
13. Petitioner was not provided advance notice that ICE intended to revoke the liberty it had afforded her for nearly twelve years.
14. Petitioner was not afforded a pre-deprivation hearing before a neutral decisionmaker.
15. Petitioner was not afforded an opportunity before her arrest to contest whether there were materially changed circumstances establishing that she had become a danger or flight risk.
16. There are no such circumstances apparent here. To the contrary, Petitioner has

no criminal history at all, longstanding family and community ties, a stable home, and an established life in the United States.

17. This case therefore concerns something fundamentally different from an ordinary request for a bond hearing after detention. Petitioner challenges the Government's initial decision to extinguish an existing liberty interest without constitutionally adequate pre-deprivation process.

18. Courts in this District have repeatedly held that where the Government previously released a noncitizen and later re-detains that person without constitutionally sufficient pre-deprivation process, the appropriate remedy is immediate release and restoration of the pre-detention status quo, not simply the promise of a later bond hearing.

19. Indeed, in *Ganbat Ayurzana*, the Court expressly held that release—not a post-deprivation bond hearing—was the proper remedy because release restores the status quo existing before the constitutional violation. The Court reasoned that permitting the Government to "cure" the violation through a later hearing would effectively render the pre-deprivation hearing requirement meaningless. **See Exh. F at 8–10.**

20. The same principle applies with even greater force here. Petitioner was not free for several months or even several years. ICE released her in **2014**, and she remained at liberty for nearly **twelve years** before the Government abruptly

revoked that liberty in September 2026.

21. Immediate release is warranted.

**JURISDICTION AND VENUE**

22. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 because Petitioner is presently in federal immigration custody in violation of the Constitution and laws of the United States.

23. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

24. This Court also possesses authority under the All Writs Act, 28 U.S.C. § 1651, to issue such orders as are necessary to preserve its jurisdiction and prevent conduct frustrating meaningful habeas review.

25. Venue is proper in this District because Petitioner is presently detained at the Adelanto ICE Processing Center within the Central District of California.

26. Petitioner does not seek review of an order of removal. Indeed, Petitioner has no final order of removal.

27. Petitioner challenges the constitutionality and legality of her present physical detention and seeks release from custody.

**PARTIES**

28. Petitioner Heghine Martirosyan is a native and citizen of Armenia currently detained by ICE at the Adelanto ICE Processing Center.

29. Respondent Fereti Semaia is the Warden of the facility where Petitioner is presently detained and is her immediate custodian.

30. Respondent Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement.

31. Respondent Markwayne Mullin is the Secretary of the United States Department of Homeland Security.

32. Respondent Field Office Director, ICE Enforcement and Removal Operations, Los Angeles, exercises authority over Petitioner's custody, supervision, release, and re-detention.

33. Respondents Does 1–10 are presently unknown federal officers or officials involved in Petitioner's continued detention.

## EXHAUSTION

34. Habeas exhaustion under 28 U.S.C. § 2241 is prudential rather than jurisdictional.

35. Exhaustion is excused where administrative remedies are inadequate, futile, incapable of providing the relief requested, or where requiring exhaustion would subject the petitioner to continuing constitutional injury.

36. Petitioner challenges the unconstitutional deprivation of liberty that occurred when the Government re-detained her without the required pre-deprivation process.

37. Petitioner seeks restoration of the liberty interest that existed immediately before that violation.

38. A later administrative custody proceeding cannot turn back time and provide the process that was constitutionally required before the Government revoked nearly twelve years of liberty.

39. Exhaustion is therefore excused.

## FACTUAL BACKGROUND

40. Petitioner was born in Armenia on April 17, 1987.

41. Petitioner arrived at or near the San Ysidro Port of Entry on or about November 1, 2014. (Exh. B.)

42. DHS issued Petitioner a Notice to Appear alleging that Petitioner was an arriving alien and further alleging that she was paroled by an immigration officer. (Exh. B.)

43. The Government's own records establish what happened next.

44. On November 1, 2014, ICE issued Petitioner a Notice of Release and Proof of Service.

45. That document states that Petitioner had been "released from service custody pending a final decision" in immigration proceedings and identifies the terms of release as "Parole with Reporting Requirements." (Exh. C.)

46. ICE also issued an EOIR notification stating that Petitioner was "Released **from**

ICE custody" and identifying the condition of release as "Paroled pursuant to 8 CFR 212.5." (Exh. C.)

47. Thus, there can be no serious dispute that Petitioner was previously physically detained by immigration authorities and that the Government affirmatively elected to release her into the community on parole.

48. Petitioner thereafter built her life in the United States.

49. She remained outside immigration custody for nearly twelve years.

50. Petitioner married United States citizen Robert Asatryan. Their California marriage certificate confirms their marriage. (Exh. D.)

51. Petitioner and her husband are raising a fifteen-year-old child.

52. Petitioner's husband explains that Petitioner plays a central role in caring for their child, managing the household, and providing the family with emotional support and stability. (Exh. D.)

53. Her husband further confirms that Petitioner has a stable residence to return to and that the family will support her and ensure her compliance with any lawful immigration requirements. (Exh. D.)

54. Petitioner also developed longstanding ties to her religious community.

55. Pastor Akop Yerkanyan of Lighthouse for the Nations confirms that Petitioner has been a member of the church community for more than ten years, has been heavily involved in church activities, and has developed deep and longstanding

ties to the congregation and broader community. (Exh. D.)

56. Petitioner also has valid employment authorization issued by USCIS. Her present authorization is valid from January 14, 2025 through January 13, 2030. (Exh. E.)

57. Most significantly, Petitioner has no criminal record.

58. She has no criminal convictions.

59. She has no pending criminal charges.

60. She has no criminal arrest history.

61. There is therefore no intervening arrest, conviction, allegation of violence, or other criminal circumstance that could plausibly explain why the Government suddenly concluded in September 2026 that detention had become necessary after nearly twelve years of liberty.

62. Petitioner also has no final order of removal.

63. According to EOIR case-status information, Petitioner's removal proceedings were terminated by an Immigration Judge in approximately May 2026.

64. Yet on September 8, 2026, immigration authorities abruptly took Petitioner into custody.

65. ICE did not first provide Petitioner notice that the Government intended to revoke her longstanding release.

66. ICE did not first provide Petitioner an individualized hearing.

67. ICE did not first establish before a neutral decisionmaker that Petitioner had become a danger to the community or flight risk.

68. ICE did not establish materially changed circumstances warranting the extraordinary step of revoking the liberty Petitioner had enjoyed since November 2014.

69. Petitioner now remains detained at the Adelanto ICE Processing Center.

## LEGAL BACKGROUND

### I. RELEASE FROM IMMIGRATION CUSTODY CREATES A PROTECTED LIBERTY INTEREST

70. Freedom from physical restraint lies at the heart of the liberty protected by the Fifth Amendment.

71. Where the Government has previously exercised its authority to release an individual from physical custody, that individual possesses a significant liberty interest in remaining free from incarceration.

72. Courts considering immigration re-detention have repeatedly recognized that this principle applies even where the person’s liberty remains subject to immigration supervision.

73. In **Boris Asatryan**, for example, the Central District held that a person who is physically free—even where that freedom is lawfully revocable—possesses a liberty interest requiring constitutionally adequate process before re-

incarceration. The court further recognized that an earlier decision to release a noncitizen at least implicitly reflects the Government's determination that physical detention was not necessary to address danger or flight risk. **See Exh. I at 4–5.**

74. Similarly, in **Milena Aperyan**, the Court held that procedural due process prohibits the Government from re-detaining a previously released noncitizen without adequate pre-deprivation process or a material intervening change in circumstances. **See Exh. H at 8–9.**

75. Aperyan is particularly instructive because that Court discussed *Cruz v. Lyons*, where the petitioner had been paroled into the United States **approximately a decade earlier** and was later detained without pre-deprivation notice or a hearing. The court required release and prohibited another re-detention without pre-deprivation process. **See Exh. H at 8–9.**

76. Petitioner's liberty interest here is at least as compelling.

77. Petitioner was released from ICE custody on November 1, 2014.

78. She remained outside custody for nearly twelve years.

79. During that time she built a marriage, raised a child, became deeply embedded in her church community, obtained authorization to work, and lived without any criminal arrest or conviction.

80. The Government could not revoke that settled liberty first and provide

constitutional justification later.

**II. PETITIONER'S SUDDEN RE-DETENTION WITHOUT PRE-DEPRIVATION PROCESS VIOLATED THE FIFTH AMENDMENT**

81. The constitutional sufficiency of the procedures employed is evaluated under the familiar framework of *Mathews v. Eldridge*, 424 U.S. 319 (1976).

82. The Court considers: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the Government's countervailing interest.

83. Each factor weighs overwhelmingly in Petitioner's favor.

**A. Petitioner's Private Liberty Interest Is Exceptionally Strong.**

84. Petitioner's interest is not merely an abstract interest in freedom.

85. It is an interest in preserving a settled life that the Government itself permitted her to build over nearly twelve years.

86. Courts recognize that the longer a previously released noncitizen resides in the community, establishes family relationships, works, and complies with immigration requirements, the stronger that liberty interest becomes.

87. In **Vladimir Hambardzumyan**, for example, the court emphasized the petitioner's more than five years outside custody, his peaceful life in the community, lawful employment, community ties, and compliance with immigration obligations in finding a substantial liberty interest. **See Exh. K at**

**6.**

88. Petitioner has been at liberty for more than twice that period.

89. Her nearly twelve years of settled community life make the deprivation particularly severe.

**B. The Risk of Erroneous Deprivation Is Extremely High.**

90. The risk of error is particularly acute where the Government previously concluded that a person could safely remain in the community and then later reverses course without first presenting evidence to a neutral decisionmaker.

91. The **Ganbat Ayurzana** court expressly recognized that the risk of erroneous deprivation is especially high where a previously released noncitizen is re-detained without a hearing or other procedural safeguard. The court emphasized that a pre-deprivation hearing would require the Government to present evidence of changed circumstances and would afford the individual an opportunity to challenge that evidence. **See Exh. F at 7.**

92. The concern identified in Ganbat is magnified here.

93. Petitioner has no intervening criminal conduct whatsoever.

94. She has no arrest to explain the Government's changed position.

95. She has no conviction.

96. She has no pending charge.

97. No evidence presently suggests that Petitioner became more dangerous or more

likely to abscond after living in the community successfully for nearly twelve years.

98. A pre-deprivation hearing would have required the Government to identify precisely what changed between its November 2014 decision to release Petitioner and its September 2026 decision to incarcerate her.

99. That safeguard was not provided.

**C. The Government Has Little Legitimate Interest in Avoiding Pre-Deprivation Process.**

100. The Government has legitimate interests in ensuring appearance at immigration proceedings and protecting public safety.

101. But those interests do not establish a legitimate need to bypass constitutional process.

102. As the Central District explained in **Levon Tonapetyan**, the Government's immigration-enforcement interest does not overcome the Fifth Amendment requirement that procedural safeguards be provided before re-detaining a person whom the Government previously found capable of residing safely in the community. **See Exh. G at 10–11.**

103. The administrative burden associated with a pre-deprivation custody proceeding is comparatively minimal.

104. By contrast, the harm from erroneously depriving a person of physical

liberty is immediate and profound.

105. All three Mathews factors therefore establish that Petitioner was entitled to constitutionally adequate process before the Government revoked her longstanding liberty.

## III. PETITIONER'S PRIOR CLASSIFICATION AS AN "ARRIVING ALIEN" DOES NOT EXTINGUISH HER PROTECTED LIBERTY INTEREST AFTER NEARLY TWELVE YEARS OF PAROLE

106. Petitioner's NTA identifies her as an "arriving alien." (Exh. B.)

107. That historical label does not erase what occurred thereafter.

108. The same NTA acknowledges that Petitioner was paroled into the United States. (Exh. B.)

109. ICE's own contemporaneous records further confirm that Petitioner was released from custody pursuant to parole under 8 C.F.R. § 212.5. (Exh. C.)

110. **Levon Tonapetyan** squarely addressed a comparable argument.

111. There, the Government emphasized the petitioner's original classification in connection with his border entry. The Court rejected the proposition that an original "arriving alien" classification somehow extinguished the significance of the petitioner's subsequent parole and extended residence in the United States. **See Exh. G at 5–6.**

112. The Tonapetyan court proceeded to recognize that the petitioner's release on

parole conferred a conditional liberty interest that could not be withdrawn without constitutionally sufficient process.

113. Tonapetyan had lived freely in the community for approximately two years.

114. Petitioner here lived freely in the United States for nearly **twelve years** after ICE affirmatively released her.

115. Her original border classification cannot erase the constitutional significance of twelve years of actual liberty.

## IV. THERE WERE NO MATERIALLY CHANGED CIRCUMSTANCES JUSTIFYING RE-DETENTION

116. A prior decision to release a noncitizen should not be discarded absent materially changed circumstances.

117. The Tonapetyan court specifically recognized that agency precedent and due-process authorities contemplate materially changed circumstances before previously granted liberty is revoked. **See Exh. G at 6.**

118. Similarly, in **Bulat Mukhamedsalin**, the Court concluded that re-detention without pre-deprivation process violated due process and ordered immediate release, holding that future re-detention could not occur absent notice and a hearing at which the Government demonstrated **changed circumstances justifying re-detention**. **See Exh. L at 1–2.**

119. Here, there are no apparent materially changed circumstances.

120. Petitioner has no criminal record.

121. Petitioner has no criminal arrest history.

122. Petitioner has no pending criminal matter.

123. Petitioner maintains strong family ties.

124. Petitioner maintains strong community and religious ties.

125. Petitioner has a stable home.

126. Petitioner has Government-issued employment authorization.

127. She has lived in the United States for nearly twelve years since ICE itself released her.

128. Nothing in these facts demonstrates that physical incarceration suddenly became necessary.

## V. A POST-DEPRIVATION BOND HEARING IS NOT AN ADEQUATE REMEDY

129. The constitutional violation challenged here occurred **when Petitioner was seized and re-incarcerated without the process due before that deprivation**.

130. A hearing occurring afterward cannot retroactively provide the process that should have preceded the loss of liberty.

131. The Central District has directly confronted this issue.

132. In **Levon Tonapetyan**, the Court held:

"Post-deprivation custody hearings do not remedy the lack of constitutionally

required pre-deprivation process."

**See Exh. G at 10.**

133. Similarly, in **Ganbat Ayurzana**, the Court expressly addressed the proper remedy and concluded that **release—not a post-deprivation hearing—was appropriate**.

134. The Ganbat court reasoned that releasing the petitioner was narrowly tailored because it restored the status quo that existed before the Government violated his due-process rights. **See Exh. F at 8.**

135. The Court further explained that permitting the Government to "cure" the violation by providing a post-detention hearing would render the requirement for a pre-detention hearing effectively meaningless because the Government could simply incarcerate first, wait for the detainee to file habeas, and offer a hearing later. **Id.**

136. That reasoning applies squarely here.

137. Petitioner does not contend merely that her current detention has become excessively long.

138. She contends that the Government lacked authority consistent with due process to extinguish nearly twelve years of conditional liberty **without providing the required process first**.

139. A later bond hearing therefore does not redress the injury.

140. It leaves Petitioner incarcerated as the direct consequence of the unconstitutional deprivation.

141. The proper remedy is to restore the status quo ante: Petitioner's immediate release subject to the conditions that governed her before September 8, 2026.

142. The **Aidana Yerkebayeva** order provides an additional direct example. There, after more than three years on supervised release, ICE re-detained the petitioner without prior process. The Court granted habeas and ordered her **immediate release under the same conditions that existed before re-detention**, while prohibiting another detention absent notice and a pre-deprivation hearing at which the Government bore the burden by clear and convincing evidence. **See Exh. J at 1–2.**

143. Petitioner should receive the same relief.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Habeas Corpus – Unconstitutional Re-Detention**

144. Petitioner realleges and incorporates paragraphs 1 through 143.

145. Petitioner possesses a protected liberty interest in remaining free from physical immigration detention.

146. That liberty interest is especially substantial because Petitioner remained outside ICE custody for nearly twelve years following the Government's

affirmative decision to release her on parole.

147. Respondents revoked that liberty without advance notice, without a pre-deprivation hearing, and without any individualized determination that physical detention had become necessary.

148. No materially changed circumstances justified Petitioner's sudden re-detention.

149. Petitioner has no criminal record whatsoever.

150. Petitioner's re-detention therefore violates the Constitution and laws of the United States.

151. Habeas relief and immediate release are warranted.

**COUNT TWO**

**Fifth Amendment – Procedural Due Process**

152. Petitioner realleges and incorporates paragraphs 1 through 151.

153. The Fifth Amendment prohibits the Federal Government from depriving a person of liberty without due process of law.

154. Petitioner had a substantial protected liberty interest in remaining outside physical custody.

155. Before September 8, 2026, Petitioner had lived outside immigration detention since November 1, 2014.

156. Respondents deprived Petitioner of that liberty without constitutionally

sufficient pre-deprivation notice or process.

157. The risk of erroneous deprivation was exceptionally high because Respondents did not establish materially changed circumstances demonstrating that Petitioner had become a danger or flight risk.

158. Requiring advance notice and an individualized hearing would have imposed little additional burden on the Government while substantially reducing the risk of erroneous incarceration.

159. Respondents therefore violated Petitioner's Fifth Amendment right to procedural due process.

160. The appropriate remedy is immediate release and restoration of Petitioner's pre-detention status.

## COUNT THREE

### Fifth Amendment – Substantive Due Process

161. Petitioner realleges and incorporates paragraphs 1 through 160.

162. Civil immigration detention must bear a reasonable relationship to a legitimate governmental purpose and may not constitute arbitrary physical confinement.

163. Petitioner has no criminal history, no criminal arrest history, a stable family residence, longstanding community ties, and nearly twelve years of history living outside immigration custody.

164. Respondents have not established any materially changed circumstances demonstrating that physical confinement suddenly became necessary.

165. Detaining Petitioner under these circumstances is arbitrary, excessive, and disproportionate to any legitimate governmental purpose.

166. Petitioner's continued confinement violates substantive due process.

**COUNT FOUR**

**All Writs Act – Preservation of Jurisdiction**

167. Petitioner realleges and incorporates paragraphs 1 through 166.

168. This Court possesses authority under 28 U.S.C. § 1651 to issue orders necessary to protect its jurisdiction and ensure that meaningful habeas relief remains available.

169. The Court may prohibit Respondents from transferring Petitioner outside the jurisdiction or otherwise taking action that would impair meaningful judicial review.

**IRREPARABLE HARM**

170. Every day of unlawful physical confinement constitutes an irreparable deprivation of liberty.

171. Petitioner has already lost the freedom she possessed continuously for nearly twelve years.

172. Her detention has separated her from her husband and fifteen-year-old child.

173. Petitioner's husband explains that her sudden absence has caused substantial emotional hardship to the family and particularly to their child. (Exh. D.)

174. The child is old enough to understand that his mother has been taken from the home, yet remains young enough to depend heavily on her daily presence, care, and reassurance. (Exh. D.)

175. Petitioner's detention has also removed her from a church community of which she has been an active member for more than a decade. (Exh. D.)

176. These harms cannot be fully compensated later.

**BALANCE OF EQUITIES AND PUBLIC INTEREST**

177. The balance of equities overwhelmingly favors Petitioner.

178. Petitioner faces the continuing loss of physical liberty and separation from her family.

179. The Government suffers no cognizable injury from returning Petitioner to the same type of community supervision under which she lived for nearly twelve years.

180. Nothing prevents Respondents from seeking future re-detention if materially changed circumstances arise and constitutionally adequate pre-deprivation procedures are provided.

181. The public has a profound interest in the lawful administration of immigration authority and in preventing unconstitutional physical detention.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court:

182. Assume jurisdiction over this action;

183. Issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241;

184. ORDER RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER FROM ICE CUSTODY, subject to the conditions of supervision in effect before her September 8, 2026 re-detention or other reasonable conditions of supervision;

185. Enjoin Respondents from re-detaining Petitioner absent constitutionally adequate advance notice and a pre-deprivation hearing before a neutral decisionmaker;

186. Enjoin Respondents from transferring Petitioner outside this Court's jurisdiction while this action remains pending without advance notice to Petitioner and/or further order of this Court;

187. Award such costs and other relief as authorized by law; and

188. Grant such other and further relief as this Court deems just and proper.

Date: September 11, 2026

Respectfully submitted,

__*ss// Sarah R. Hacobian*__________
Sarah R. Hacobian, Esq.
Attorney for Petitioner

## INDEX OF EXHIBITS

**Exhibit A** – Declaration of Sarah R. Hacobian, Esq.

**Exhibit B** – Notice to Appear

**Exhibit C** – November 1, 2014 Parole / Notice of Release / ICE Release Documents

**Exhibit D** – Husband Support Letter; Marriage Certificate; Child's Birth Certificate; Church Support Letter

**Exhibit E** – Employment Authorization Approval and Employment Authorization

**Exhibit F** – *Ganbat Ayurzana v. Lyons*, Order Granting Petition and Ordering Release

**Exhibit G** – *Levon Tonapetyan v. Lyons*, Order Granting Petition and Issuing Writ of Habeas Corpus

**Exhibit H** – *Milena Aperyan v. Semaia*, Order Granting Petition and Issuing Writ of Habeas Corpus

**Exhibit I** – *Boris Asatryan v. Lyons*, Order Granting Petition for Habeas Corpus

**Exhibit J** – *Aidana Yerkebayeva v. Lyons*, Memorandum Decision and Order

**Exhibit K** – *Vladimir Hambardzumyan v. Lyons*, Order Granting Petition for Writ of Habeas Corpus

**Exhibit L** – *Bulat Mukhamedsalin v. Lyons*, Order Granting Petition for Writ of Habeas Corpus

# Exhibit A

**DECLARATION OF SARAH REBECCA HACOBIAN, ESQ.**

I, **Sarah Rebecca Hacobian**, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California, State Bar No. 340443, and am the principal of SRH Law Group, APC. I am counsel for Petitioner Heghine Martirosyan in this matter. I make this declaration based upon my personal knowledge, my communications with Petitioner and her family, and my review of immigration records and supporting documentation obtained in connection with my representation. If called as a witness, I could and would competently testify to the matters set forth herein.
2. Petitioner Heghine Martirosyan is a native and citizen of Armenia and is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center.
3. Based upon my review of Petitioner's Notice to Appear, Petitioner arrived at or near the San Ysidro Port of Entry on or about November 1, 2014. The Notice to Appear further reflects that Petitioner was thereafter paroled by an immigration officer. A true and correct copy of Petitioner's Notice to Appear is attached to the Petition as **Exhibit B**.
4. I have also reviewed Petitioner's immigration release records from November 1, 2014. Those records include a Notice of Release and Proof of Service stating that Petitioner was released from immigration custody with "Parole with

Reporting Requirements," as well as an ICE notice reflecting that Petitioner was "[r]eleased from ICE custody" and "[p]aroled pursuant to 8 CFR 212.5." True and correct copies of those documents are attached to the Petition as **Exhibit C**.

5. Based upon these records, Petitioner was previously physically detained by immigration authorities and was affirmatively released into the community on parole in November 2014.

6. Following her release, Petitioner remained outside immigration detention for nearly twelve years before her present re-detention.

7. I am informed and believe, based upon my communications with Petitioner and her family and my review of available records, that Petitioner has **no criminal convictions, no pending criminal charges, and no criminal arrest history**.

8. Petitioner is married to Robert Asatryan, a United States citizen. I have reviewed their California marriage certificate. A true and correct copy of the marriage certificate is included within **Exhibit D**.

9. Petitioner has a fifteen-year-old child. I have reviewed documentation relating to Petitioner's child, including the child's birth certificate, which is included within **Exhibit D**.

10. I have reviewed a signed letter from Petitioner's husband, Robert Asatryan. In that letter, Mr. Asatryan explains that Petitioner plays a central role in caring for

the child, managing their household, and providing emotional support and stability to the family. He further confirms that Petitioner has a stable home to return to and that the family will support her and assist her in complying with any immigration requirements. The husband's support letter is included within **Exhibit D**.

11. I have also reviewed a signed letter from Pastor Akop Yerkanyan of Lighthouse for the Nations. Pastor Yerkanyan states that Petitioner has been a member of the church community for more than ten years, has been heavily involved in church activities, and has developed deep and longstanding ties to the congregation and community. The church support letter is included within **Exhibit D**.

12. I have reviewed Petitioner's USCIS employment authorization documentation. USCIS approved Petitioner's employment authorization, which is presently valid from January 14, 2025 through January 13, 2030. True and correct copies of the employment authorization approval notice and card are attached as **Exhibit E**.

13. Based upon the EOIR case-status information available to me, Petitioner's immigration proceedings were terminated by an Immigration Judge in or about May 2026.

14. On or about September 8, 2026, Petitioner was taken back into ICE custody.

15. To my knowledge, Petitioner was not provided advance notice that ICE intended to revoke the liberty she had maintained since November 2014.

16. To my knowledge, Petitioner was not provided a pre-deprivation hearing before a neutral decisionmaker prior to being taken back into custody.

17. To my knowledge, no neutral decisionmaker made a pre-deprivation determination that materially changed circumstances established that Petitioner had become a danger to the community or a flight risk.

18. I am unaware of any intervening criminal conduct that would justify Petitioner's sudden re-detention. To the contrary, the information available to me reflects that Petitioner has no criminal record and has significant family, residential, religious, and community ties in the United States.

19. Petitioner's present detention has separated her from her United States citizen husband and her fifteen-year-old child and has caused significant hardship to the family.

20. I have also reviewed the court orders attached to the Petition as **Exhibits F through L**, including orders granting habeas relief in cases involving previously released noncitizens who were later re-detained without adequate pre-deprivation process.

21. I make this declaration in support of Petitioner's Petition for Writ of Habeas Corpus and request that the Court order Petitioner's immediate release from

immigration custody and restore the status quo that existed prior to her September 8, 2026 re-detention.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **September 11, 2026**, at **Glendale, California.**

__*ss// Sarah R. Hacobian* ___________________
**Sarah R. Hacobian, Esq.**
Attorney for Petitioner

# Exhibit B

Uploaded on: 08/15/2025 at 09:29:59 AM (Pacific Daylight Time) Base City: NLA

Department of Homeland Security

## Notice to Appear

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 000000

File No: 206913680

DOB: April 17, 1987 Event No:

In the Matter of:

Respondent: HEGHINE NMN MARTIROSYAN currently residing at:

1111 E. LEXINGTON DR.,APT 117, GLENDALE, CA 91206

(Number, street, city and ZIP code) (Area code and phone number)

[x] 1. You are an arriving alien.
[ ] 2. You are an alien present in the United States who has not been admitted or paroled.
[ ] 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of Armenia and a citizen of Armenia;
3. You arrived in the United States at or near San Ysidro, California, on or about November 1, 2014;
4. You were then paroled by an Immigration Officer;
5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30 [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

300 N. LOS ANGELES ST., RM 4330
LOS ANGELES, CA 90012

*(Complete Address of Immigration Court, including Room Number, if any)*

on September 15, 2025 *(Date)* at 08:30 AM *(Time)* to show why you should not be removed from the United States based on the charge(s) set forth above.

Ashtin Jacobson-Munger Supervisory Immigration Services Officer
*(Signature and Title of Issuing Officer)*

Date: August 15, 2025

Nebraska Service Center, Lincoln, NE
*(City and State)*



EOIR — 1 of 3

Exh. 1 - Adm.

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589**. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at **http://www.ice.gov/contact/ero**, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is ENGLISH.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: ______________________

*(Signature of Respondent)*

Date: ______________________

______________________
*(Signature and Title of Immigration Officer)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on August 15, 2025, in the following manner and in compliance with section 239(a)(1) of the Act.

[ ] In person [ ] by certified mail, returned receipt # requested [ x ] by regular mail
[ ] Attached is a credible fear worksheet.
[ x ] Attached is a list of organizations and attorneys which provide free legal services.

The alien was provided oral notice in the ______________ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

______________________
*(Signature of Respondent if Personally Served)*

Nissan Barakat ISA-OA
*(Signature and Title of Officer)*

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at **https://www.dhs.gov/system-records-notices-sorns**. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at **https://www.justice.gov/opcl/doj-systems-records**. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:** Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

# Exhibit C

DEPARTMENT OF HOMELAND SECURITY
U. ... der Protection

OMB No. 1651-0111



D
A

88 29

PAROLED
Until NOV. 1, 2015
Purpose: REM PROC
11/01/14 SND 762095
(Date) (Location) (Officer)
16318
DEPARTMENT OF HOMELAND SECURITY

NO ... RY INTO THE U.S.A.
UNDER SND DOCKET CONTROL
IN REMOVAL PROCEEDINGS

18. Family Name
MARTIROSYAN

19. First (Given) Name
HEGHINE

20. Birth Date (DD/MM/YY)
04171987

21. Country of Citizenship
ARMENIA

A206 913 680

212.5(B)(5)

CBP Form I-94 (05/08)

See Other Side

STAPLE HERE

# Notice of Release and Proof of Service

To: Heghine MARTIROSYAN
1111 E. Lexington Drive
Glendale, Ca. 91206
(818) 373-9078

Date: November 1, 2014
File: A206 913 680
Bond: **(Parole with Reporting Requirements)**

You have been released from service custody pending a final decision in your exclusion/deportation hearing. It is understood that you will be residing at the above address. The law requires you notify the Immigration Judge (at the address shown below) of any address correction or address change. When doing so, be sure to include your name and the File Number shown above in your written communication. The attached form, EOIR-33 can be used for this purpose.

Office of the Immigration Judge
606 S. Olive Street, 15th Floor
Los Angeles, Ca. 90014

If you have already appeared before the Immigration Judge, you have been told when to appear for a further hearing. If you have yet to appear before the Judge, a notice of hearing will soon be sent to you at the above address. If you do not appear for the hearing, three (3) actions can be taken in your case:

1. Your deportation hearing may be held in your absence.
2. If a bond has been paid, it may be breached.
3. A warrant for your arrest may be issued.

You must report in person to Non-Detained Office/ATD Office
(Name and Title of Case Officer), Deportation Officer
At 300 Los Angeles Street, Room 7631A
Los Angeles, Ca. 90012 (213) 830 7911 on November 21, 2014 at 10:00 a.m.

I certify that the address listed above, furnished by me to the Service, is correct, and that a copy of this notice has been received by me this date

Signature of Respondent — Date: November 1, 2014

## PROOF OF SERVICE

I certify that, on this date, I served the attached Form I-830 and release notice on the respondent by the following method (as checked):

X Hand delivery.

____ By first class mail, postage prepaid, to the following address:




____ Service by mail on respondent's counsel of record at the following address:



Tapia, H. IEA — November 1, 2014
Signature and Title of ICE Employee — Date

DRO May 22, 2002 — Distribution: EOIR / A File / Alien

U.S. Department of Homeland Security
U. S. Immigration and Customs Enforcement

# Notice to EOIR: Alien Address

Date: November 1, 2014 File No: A206 913 680

To: Office of the Immigration Judge
Executive Office for Immigration Review
606 S. Olive Street, 15th Floor
Los Angeles, Ca. 90014 (213) 894 2811

From: Office of the Field Director
U. S. Immigration and Customs Enforcement
300 North Los Angeles Street, Room 7631A
Los Angeles, Ca 90012 (213) 830 7911

Respondent: Heghine MARTIROSYAN

**This is to notify you that this respondent is:**

☐ Currently incarcerated by other than ICE. A charging document has been served on the respondent, and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below. He/she is incarcerated at:

His/her anticipated release date is:

☐ Currently detained by ICE at:

☐ Currently detained by ICE and transferred this date to a new location:

**ICE Motion for Change of Venue attached.** ☐ **Yes** ☒ **NO**

☒ Released from ICE custody on the following condition(s):
- ☐ Personal Recognizance
- ☐ Order of Recognizance (Form I-220A)
- ☐ Bond in the amount of $ ☐ Surety bond ☐ Cash bond
- ☒ Other Paroled pursuant to 8 CFR 212.5.

☒ Upon release from ICE custody, the respondent reported his/her address and telephone number will be:
Heghine MARTIROSYAN
1111 E. Lexington Drive
Glendale, CA. 91206 (818) 373-9078

☒ Upon release from ICE custody, the respondent was reminded of the requirements contained in Section 239 (a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with an EOIR change of address form (EOIR-33).

| | |
|---|---|
| [signature] | Immigration Enforcement Agent |
| *Signature-ICE Officer* | *Title-ICE Officer* |
| Tapia, H. | San Diego, CA |
| *Printed Name of ICE Officer* | *Location* |

Form I-830 (Rev. 4/1/97)N

Distribution: EOIR / A-File

# Exhibit D

**RE: Letter of Support for Heghine Martirosyan**

To Whom It May Concern:

My name is **Pastor Akop Yerkanyan**, and I am a pastor at **Lighthouse for the Nations** in Glendale, California. I am writing in strong support of **Heghine Martirosyan**, who is currently detained by U.S. Immigration and Customs Enforcement.

Heghine has been a member of our church community for **more than ten years**. During that time, I have come to know her as a devoted, caring, and dependable person who has established deep and longstanding ties to our church and community.

Heghine is not simply someone who occasionally attends our church. She has been **heavily involved in our church community for many years** and has consistently participated in church activities and supported our congregation. She has developed meaningful relationships with members of our church, and she is a valued and respected part of our community.

Her detention has been very difficult for those who know and care about her. Our congregation is concerned for Heghine and her family, particularly because she is a wife and mother and plays such an important role in her family's daily life.

If Heghine is released from custody, she will continue to have the full support of our church community. She has an established community to return to, and our church will remain available to provide her and her family with spiritual, emotional, and community support throughout her immigration proceedings.

Based upon the more than ten years that I have known Heghine through our church, I can attest to her strong character, her commitment to her family and community, and the meaningful roots she has established here.

I respectfully ask that you take Heghine's longstanding membership and involvement in our church, her strong community ties, and the support available to her into consideration and allow her to return to her family and community while her immigration case proceeds.

Respectfully,

**Pastor Akop Yerkanyan**
Lighthouse for the Nations
2001 Cañada Blvd
Glendale, CA 91208

Signature: [signature] Date: 9-10-26

**RE: Heghine Martirosyan – Letter of Support**

To Whom It May Concern:

My name is **Robert Asatryan**, and I am the husband of **Heghine Martirosyan**, who is currently detained at the Adelanto ICE Processing Center. I am writing to express my support for my wife and to explain the serious hardship her detention is already causing our family.

Heghine is an essential part of our family and our home. We have a **15-year-old child together**, and Heghine has always played a central role in caring for our child and managing our household. She is the person our family depends on every day. She takes care of our child's needs, keeps our household functioning, and provides the emotional support and stability that our family relies upon.

Her sudden detention has been extremely difficult for our child. At 15 years old, our child is old enough to understand that his mother has been taken away, but still young enough to need a mother's daily presence, care, and reassurance. The uncertainty of not knowing when Heghine will be able to return home has caused tremendous stress and sadness for our family.

Her absence has also placed a significant burden on me. I am now trying to manage all of the responsibilities that Heghine normally handles while also supporting our child emotionally through this situation. Our home simply does not function the same without her.

Heghine is deeply loved and needed at home. If she is released, she will have a stable home with our family, and I will make sure that she has all of the support she needs. Our family will assist her in complying with every requirement and attending every immigration court hearing or appointment required of her.

I respectfully ask that you please consider the significant hardship that Heghine's continued detention is causing our family, particularly our 15-year-old child, and allow her to return home to us while her immigration matter proceeds.

Thank you for your time and consideration.

Respectfully,

**Robert Asatryan**
Husband of Heghine Martirosyan

Robert Asatryan Date: ______________ 9/10/26

STATE OF CALIFORNIA
CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES

## REGISTRAR-RECORDER/COUNTY CLERK

5 2021 19 019358

**CONFIDENTIAL**
**LICENSE AND CERTIFICATE OF MARRIAGE**
MUST BE LEGIBLE – MAKE NO ERASURES, WHITEOUTS, OR OTHER ALTERATIONS
USE DARK INK ONLY

STATE FILE NUMBER | LOCAL REGISTRATION NUMBER

**FIRST PERSON DATA** (■ Groom ☐ Bride)

1A. FIRST NAME: Robert
1B. MIDDLE: —
1C. CURRENT LAST: Asatryan
1D. LAST NAME AT BIRTH (IF DIFFERENT THAN 1C): —
2. DATE OF BIRTH (MM/DD/CCYY): 05/29/1970
3. STATE/COUNTRY OF BIRTH: Armenia
4. # PREV. MARRIAGES/SRDP: 01
5A. LAST MARRIAGE/SRDP ENDED BY: ☐ DEATH ■ DISSO ☐ ANNULMENT ☐ TERM SRDP ☐ N/A
5B. DATE ENDED (MM/DD/CCYY): 05/13/2017
6. ADDRESS: 541 Ivy Street Apt 4
7. CITY: Glendale
8. STATE/COUNTRY: CA
9. ZIP CODE: 91204
10A. FULL BIRTH NAME OF FATHER/PARENT: Aleksan Asatryan
10B. STATE OF BIRTH (IF OUTSIDE U.S. ENTER COUNTRY): Iran
11A. FULL BIRTH NAME OF MOTHER/PARENT: Haykanush Hayrapetyan
11B. STATE OF BIRTH (IF OUTSIDE U.S. ENTER COUNTRY): Iran

**SECOND PERSON DATA** (☐ Groom ■ Bride)

12A. FIRST NAME: Heghine
12B. MIDDLE:
12C. CURRENT LAST: Martirosyan
12D. LAST NAME AT BIRTH (IF DIFFERENT THAN 12C): —
13. DATE OF BIRTH (MM/DD/CCYY): 04/17/1987
14. STATE/COUNTRY OF BIRTH: Armenia
15. # PREV. MARRIAGES/SRDP: 00
16A. LAST MARRIAGE/SRDP ENDED BY: ☐ DEATH ☐ DISSO ☐ ANNULMENT ☐ TERM SRDP ■ N/A
16B. DATE ENDED (MM/DD/CCYY): —
17. ADDRESS: 541 Ivy Street Apt 4
18. CITY: Glendale
19. STATE/COUNTRY: CA
20. ZIP CODE: 91204
21A. FULL BIRTH NAME OF FATHER/PARENT: Minas Martirosyan
21B. STATE OF BIRTH (IF OUTSIDE U.S. ENTER COUNTRY): Azerbaijan
22A. FULL BIRTH NAME OF MOTHER/PARENT: Srbuhi Grigoryan
22B. STATE OF BIRTH (IF OUTSIDE U.S. ENTER COUNTRY): Armenia

**AFFIDAVIT**

WE, THE UNDERSIGNED, CURRENTLY LIVING TOGETHER AS SPOUSES, DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT WE ARE UNMARRIED AND THAT THE FOREGOING INFORMATION IS TRUE AND CORRECT TO THE BEST OF OUR KNOWLEDGE AND BELIEF. WE FURTHER DECLARE THAT NO LEGAL OBJECTION TO THE MARRIAGE, NOR TO THE ISSUANCE OF A LICENSE IS KNOWN TO US. WE ACKNOWLEDGE RECEIPT OF THE INFORMATION REQUIRED BY FAMILY CODE SECTION 358 AND HEREBY APPLY FOR A CONFIDENTIAL LICENSE AND CERTIFICATE OF MARRIAGE.

23. SIGNATURE OF PERSON LISTED IN FIELDS 1A-1D: ▶ [signature]
24. SIGNATURE OF PERSON LISTED IN FIELDS 12A-12D: ▶ [signature]

**LICENSE TO MARRY**

I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT THE ABOVE-NAMED PARTIES TO BE MARRIED HAVE PERSONALLY APPEARED BEFORE ME AND PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE TO BE THE PERSONS CLAIMED, OR THAT THE PERSON PERFORMING THE CEREMONY HAS PERSONALLY APPEARED BEFORE ME AND PRESENTED AN AFFIDAVIT SIGNED BY THE PARTIES TO BE MARRIED DECLARING THAT ONE OR BOTH OF THE PARTIES ARE PHYSICALLY UNABLE TO APPEAR AND EXPLAINING THE REASONS THEREFOR IN ACCORDANCE WITH FAMILY CODE SECTION 502. THE PARTIES HAVING FURTHER DECLARED THAT THEY MEET ALL OF THE REQUIREMENTS OF THE LAW, AND HAVING PAID THE FEES PRESCRIBED BY LAW, AUTHORIZATION AND LICENSE IS HEREBY GIVEN TO ANY PERSON DULY AUTHORIZED TO PERFORM A MARRIAGE CEREMONY WITHIN THE STATE OF CALIFORNIA TO SOLEMNIZE THE MARRIAGE OF THE ABOVE-NAMED PERSONS PURSUANT TO FAMILY CODE SECTION 500. NOTE: THE MARRIAGE CEREMONY MUST TAKE PLACE IN THE STATE OF CALIFORNIA.

25A. ISSUE DATE (MM/DD/CCYY): 08/19/2021
25B. EXPIRES AFTER (MM/DD/CCYY): 11/17/2021
25C. NAME OF COUNTY CLERK: DEAN C. LOGAN
25D. SIGNATURE OF CLERK OR DEPUTY CLERK: BY ▶ [signature]
25E. MARRIAGE LICENSE NUMBER: C2726428
25F. COUNTY OF ISSUE: LOS ANGELES
25G. RETURN COMPLETED MARRIAGE LICENSE TO (INCLUDE ADDRESS): 12400 Imperial Highway, Norwalk, CA 90650

**ITEMS 26A–26D COMPLETED ONLY IF LICENSE IS ISSUED BY NOTARY PUBLIC**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT.

26A. STATE OF CALIFORNIA, COUNTY OF: Los Angeles
SUBSCRIBED AND SWORN TO (OR AFFIRMED) BEFORE ME ON THIS 7th DAY OF October 2021
BY R. Asatryan / H. Martirosyan
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE TO BE THE PERSON(S) WHO APPEARED BEFORE ME.
26B. TYPED NAME OF NOTARY: LILIT TONYAN
26C. SIGNATURE OF NOTARY: ▶ [signature]
26D. AFFIX NOTARY SEAL:

NR01
LILIT TONYAN
COMM. #2352572
Notary Public · California
Los Angeles County
My Comm. Expires Mar. 21, 2025
NR01

**CERTIFICATION OF PERSON SOLEMNIZING MARRIAGE**

I, THE UNDERSIGNED, DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA, THAT THE ABOVE-NAMED PARTIES WERE JOINED BY ME IN MARRIAGE IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA. NOTE: THE MARRIAGE CEREMONY MUST TAKE PLACE IN THE STATE OF CALIFORNIA.

27A. DATE OF MARRIAGE (MM/DD/CCYY): 10/07/2021
27B. CITY OF MARRIAGE: Glendale
27C. COUNTY OF MARRIAGE: Los Angeles
28A. SIGNATURE OF PERSON SOLEMNIZING MARRIAGE: ▶ [signature]
28B. RELIGIOUS DENOMINATION (IF CLERGY): Non Denom
28C. NAME OF PERSON SOLEMNIZING MARRIAGE (TYPE OR PRINT CLEARLY): Lilit Tonyan
28D. OFFICIAL TITLE: Minister
28E. ADDRESS, CITY, STATE/COUNTRY, AND ZIP CODE: 1415 E. Colorado Street Ste B Glendale, California 91205

**NEW NAME(S) (IF ANY) (SEE REVERSE)**

NEW MIDDLE AND LAST NAME OF PERSON LISTED IN 1A-1D (IF ANY) FOR USE UPON SOLEMNIZATION OF THE MARRIAGE (SEE REVERSE FOR INFORMATION)
29A. FIRST – MUST BE SAME AS 1A: —
29B. MIDDLE: —
29C. LAST: —

NEW MIDDLE AND LAST NAME OF PERSON LISTED IN 12A-12D (IF ANY) FOR USE UPON SOLEMNIZATION OF THE MARRIAGE (SEE REVERSE FOR INFORMATION)
30A. FIRST – MUST BE SAME AS 12A: —
30B. MIDDLE: —
30C. LAST: —

**COUNTY CLERK**

31A. NAME OF COUNTY CLERK: DEAN C. LOGAN
31B. SIGNATURE OF CLERK OR DEPUTY CLERK: BY ▶ [signature]
31C. DATE ACCEPTED FOR REGISTRATION: OCT 27 2021

CALIFORNIA DEPARTMENT OF PUBLIC HEALTH - VITAL RECORDS
VS-123 (01/01/2015)

CALOSANG02

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.

[signature]
DEAN C. LOGAN
Registrar-Recorder/County Clerk

This copy is not valid unless prepared on an engraved border displaying the seal and signature of the Registrar-Recorder/County Clerk.

NOV 18 2021
1000004225679
0008605531 - 02 - E

THE GREAT SEAL OF THE STATE OF CALIFORNIA — EUREKA
REGISTRAR-RECORDER/COUNTY CLERK — COUNTY OF LOS ANGELES - CALIFORNIA

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

THE UNITED STATES OF AMERICA

# I-797 | NOTICE OF ACTION | DEPARTMENT OF HOMELAND SECURITY U.S. CITIZENSHIP AND IMMIGRATION SERVICES

#5557

| Receipt Number | | Case Type |
|---|---|---|
| IOE0914502277 | | I130 - PETITION FOR ALIEN RELATIVE |
| **Received Date** 12/10/2021 | **Priority Date** 12/10/2021 | **Petitioner** A056 442 188 ASATRYAN, ROBERT ALEKSAN |
| **Notice Date** 12/08/2023 | **Page** 1 of 1 | **Beneficiary** A206 913 680 MARTIROSYAN, HEGHINE |

ASATRYAN, ROBERT ALEKSAN
c/o WOOD, JUDITH LESLEY
LAW OFFICE OF JUDITH L WOOD
201 S SANTA FE AVE STE 101
LOS ANGELES CA 90012

**Notice Type:** Approval Notice
Section: Husband or wife of U.S Citizen, 201(b) INA

The above petition has been approved. The petition indicates that the beneficiary wishes to apply for adjustment of status to that of a lawful permanent resident. They should submit a copy of this notice, along with a Form I-485, Application to Register Permanent Residence or Adjust Status. The beneficiary can obtain Form I-485 from the USCIS website at www.uscis.gov, by contacting the USCIS National Customer Service Center (NCSC) at 1-800-375-5283, or by visiting the local USCIS field office. Filing address information can be found on the USCIS website at www.uscis.gov.

If the beneficiary decides to apply for an immigrant visa outside the United States based on this petition, you should file Form I-824, Application for Action on an Approved Application or Petition, to request that we send the petition to the U.S. Department of State National Visa Center (NVC).

The NVC processes all approved immigrant visa petitions that require consular action. The NVC also determines which consular post is the appropriate consulate to complete visa processing. It will then forward the approved petition to that consulate.

The NVC will contact the beneficiary of this petition with further information about immigrant visa processing steps.

**THIS NOTICE IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA.**

The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status.

**NOTICE:** Although this application or petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

RECEIVED
DEC 15 2023

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

Nebraska Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 82521
Lincoln NE 68501-2521

**USCIS Contact Center: www.uscis.gov/contactcenter**

COAT OF ARMS OF THE REPUBLIC OF ARMENIA

# BIRTH CERTIFICATE

| | |
|---|---|
| CITIZEN (First name, Fathers, Last) | **M[redacted] MARTIROSYAN** |
| NATIONALITY: | Armenian |
| DATE OF BIRTH: (month, day, year) | [redacted] **2011y.** |
| PLACE OF BIRTH: (city, country) | city of Yerevan, Rep. of Armenia |

BIRTH REGISTRATION WAS RECORDED IN THE REGISTRY BOOK OF ACTS OF BIRTHS ON:
**07/22/2011y. Registration No. 1267**

PARENTS:

| | |
|---|---|
| FATHER: (First name, Fathers, Last) | Martirosyan Gurgen |
| NATIONALITY | |
| MOTHER: (First name, Fathers, Last) | Martirosyan Heghine Minasi |
| NATIONALITY | Armenian |
| PLACE OF REGISTRATION | Republican Archives of the Civil Status Deeds c. of Yerevan, Regional District of Nor Nork |
| DATE OF DELIVERY: | 07/22/2011y. |
| REGISTRAR OF ACTS OF CIVIL STATUSES: | (signature) Official Seal AN-0747105 |

**AB # 137895**

CERTIFICATION

This is to certify that I, Silva Mnatsakanyan, am competent in both, English and Armenian languages, and that the above/attached document is to the best of my knowledge and belief an accurate, true, correct and unaltered translation into English of the document in Armenian entitled "Birth Certificate".

[signature] 03/26/15

A notary public or other office completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles
Subscribed and sworn to (or affirmed) before me on this 26 day of March, 20 15, by Silva Mnatsakanyan
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Notary Public Signature [signature]

MARINE KYUCHKYAN
Commission # 2003423
Notary Public - California
Los Angeles County
My Comm. Expires Jan 7, 2017

AN - 0747105



ԾՆՆԴՅԱՆ ՎԿԱՅԱԿԱՆ

Քաղաքացի ........................ (անունը)

........................ (հայրանունը, ազգանունը) ........................ ազգությունը

ծնվել է 2017 թ. 07 «18»-ին ՀՀ ........................ (մարզ)

........................ (քաղաք, գյուղական համայնք)

որի մասին ծննդյան ակտերի գրանցման գրքում

2017 թ. [redacted]ին կատարվել է № 1267 գրանցումը

Ծնողները

Հայրը ........................ (անունը)

........................ (հայրանունը, ազգանունը)

Ազգությունը ........................

Մայրը ........................ (անունը)

........................ (հայրանունը, ազգանունը)

Ազգությունը ........................

Ծնունդը գրանցվել է ........................ (քաղաքացիական կացության ակտերի գրանցման մարմնի անվանումը)

Վկայականը տրվել է 2017 թ. 07 «22»-ին

ՔԱՂԱՔԱՑԻԱԿԱՆ ԿԱՑՈՒԹՅԱՆ ԱԿՏԵՐԻ ԳՐԱՆՑՄԱՆ ԲԱԺՆԻ ՊԵՏ

Կ.Տ.

ԻԲ № 137895

# Exhibit E

Department of Homeland Security
U.S. Citizenship and Immigration Services

**Form I-797C, Notice of Action**

**THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.**

| Receipt Number | USCIS Account Number | Case Type |
|---|---|---|
| IOE0925312576 | 035944170019 | I765 - APPLICATION FOR EMPLOYMENT AUTHORIZATION |
| **Received Date** 03/29/2024 | **Priority Date** 03/29/2024 | **Applicant** A206 913 680 MARTIROSYAN, HEGHINE |
| **Notice Date** 01/15/2025 | **Page** 1 of 1 | |

MARTIROSYAN, HEGHINE
c/o GAMBOURIAN, A ASHLEY
LAW OFF OF A ASHLEY GAMBOURIAN
101 SOUTH FIRST STREET STE 303
BURBANK CA 91502

**Notice Type:** Approval Notice
Class: C09
Valid from 01/14/2025 to 01/13/2030

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

What the Official Notice Said

**We have approved your application for employment authorization.** We will send your Employment Authorization Document (EAD) (also known as an EAD card or Form I-766) to you separately. Your EAD card should be produced within one to two weeks. Your EAD card will be mailed via U.S. Postal Service (USPS) Priority Mail with Delivery Confirmation to the address you designated. The time frame in which you will receive your EAD card may vary, depending on USPS delivery times. Please allow a total of 30 days from approval before inquiring with USCIS. We encourage you to use Case Status Online https://egov.uscis.gov/ to find your USPS tracking number for EAD card delivery. If you have not received your EAD card within this time frame, please visit https://egov.uscis.gov/e-request/Intro.do for instructions on how to submit an inquiry.

Your EAD card is proof that you are allowed to work in the United States. Show the card to your employer to verify your authorization to work during the dates on the card. You cannot use this approval notice as proof of your employment authorization.

When you receive your EAD card, please check that all the information on the card is correct. If you need to change any information on the card, please mail all of the following to the office listed below:

- A letter explaining what information needs to be corrected,
- Your EAD card,
- A photocopy of this notice, and
- Evidence to show what the correct information should be. For example, if you need to correct your name, submit a copy of your birth certificate or official name change.

If You Have a Pending Form I-485

If you have a pending or approved Form I-140 and a pending Form I-485, you may request to change employers if your Form I-485 has been pending for at least 180 days. In order to do so, you need to submit documentation about your new job offer. For more information on how to request a change of employers and what information you must submit, please visit the USCIS website at www.uscis.gov.

If your EAD card expires before we make a final decision on your Form I-485, you may apply for a new EAD card.

**THIS FORM IS NOT A VISA AND MAY NOT BE USED IN PLACE OF A VISA OR EVIDENCE OF EMPLOYMENT AUTHORIZATION.**

NOTICE: Although this application or petition has been approved, USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules, regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

**USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.**

National Benefits Center
U.S. CITIZENSHIP & IMMIGRATION SVC
P.O. Box 648003
Lee's Summit MO 64002

**USCIS Contact Center: www.uscis.gov/contactcenter**


UNITED STATES OF AMERICA
EMPLOYMENT AUTHORIZATION
Surname
MARTIROSYAN
Given Name
HEGHINE
USCIS#
206-913-680
Category
C09
Card#
IOE0925312576
Terms and Conditions
None
Date of Birth
17 APR 1987
Sex
F
Country of Birth
Armenia
Valid From:
01/14/25
Card Expires:
01/13/30
NOT VALID FOR REENTRY TO U.S.

# Exhibit F

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GANBAT AYURZANA,

Petitioner,

v.

TODD M. LYONS, et al.,

Respondents.

Case No. 5:26-cv-02238-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Ganbat Ayurzana ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 7.) The Petition is granted and Respondents are directed to immediately release him from custody.

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on April 29, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: "Immediate release is warranted" because "Petitioner's continued detention" is "unnecessary," "arbitrary," and "excessive" because "[h]e has no criminal history, strong family ties, known residence, and a demonstrated history of compliance." (Pet. at 7 ¶¶ 59-66.) Alternatively, the Petition seeks "a custody hearing with the burden on the government." (Pet. at 9 ¶ 90.)

Ground 2: Respondents violated Petitioner's due process rights under the Fifth Amendment because he "was deprived of liberty without process," "the deprivation carries a high risk of error," and the "government failed to provide any procedural safeguards." (Pet. at 7-8 ¶¶ 67-74.) Respondents "fail[ed] to provide a meaningful custody determination prior to detention" and "failed to comply with [their] own regulations governing post-order detention and supervision, including 8 C.F.R. §§ 241.4 and 241.13." (Pet. at 6 ¶¶ 50-51.)

Ground 3: "This Court may issue all orders necessary to preserve jurisdiction and prevent transfer or actions frustrating meaningful review" under the All Writs Act. (Pet. at 8 ¶ 76.)

Respondents answered the Petition on May 6, 2026. ("Answer" at Dkt. 9.) They argue: (1) "the Petition is conclusory and vague" with "no specific factual allegations explaining why the arrest or detention is unlawful" (id. at 3); (2) "to the extent [the] Petition is raising a prolonged detention claim," he "does not qualify for Zadvydas[1] relief" because he "has not yet been detained for 90 days, much less the six months the Supreme Court held to be presumptively reasonable" (id. at 3-4), and "removal to Mongolia is significantly likely in the reasonably foreseeable future" (id. at 4); (3) "Petitioner has not shown that Respondent[s] violated regulations in exercising [their] discretion to revoke an OSUP [order of supervised release]" because "he submits no evidence proving that" and he "was only recently arrested and detained." (id. at 5-6); and (4) even if Petitioner had shown a

[1] Zadvydas v. Davis, 533 U.S. 678 (2001)

regulatory violation, release from custody is not an appropriate remedy (id. at 6). The Answer does not attach any exhibits or dispute any of the facts alleged in the Petition.

Petitioner filed a reply on May 8, 2026. ("Reply" at Dkt. 10.) He argues that "Respondents' Answer fundamentally mischaracterizes the nature of Petitioner's claims," because "this case is not about prolonged detention under Zadvydas" but rather "the government's sudden, warrantless, and process free deprivation of liberty of a fully compliant individual who had been living in the community." (Id. at 2 ¶¶ 2-4.) He argues, "Because [he] was detained without notice, without a hearing, and without any individualized custody determination, his continued detention violates the Fifth Amendment and warrants immediate release." (Id. at 2 ¶ 6.) Regarding the proper remedy, he argues that "a post-deprivation hearing does not cure the violation." (Id. at 4.)

**III. FACTUAL RECORD**

Petitioner is a native and citizen of Mongolia who presented himself for admission on March 8, 2023, at the Otay Mesa Port of Entry. (Pet. at 4 ¶¶ 26-27.) On March 9, 2023, he was served with a notice to appear ("NTA") stating he was an arriving alien who had applied for admission and was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act ["INA"]." (Pet. Ex. B / Dkt. 1 at 16 (the NTA).)

At some point, Petitioner was released from ICE custody under conditions that required him to check in regularly. It is not clear whether he was released on bond, on an OSUP, or on his own recognizance.

Petitioner states that, since entering the United States, he has complied with all ICE reporting requirements and has never missed a check-in appointment. (Pet. at 4 ¶¶ 28-29.) He has no criminal history. (Pet. at 4 ¶ 30.) Petitioner is a husband and father of two children who depend on him emotionally and financially. (Pet. at

2 ¶ 5; id. at 4 ¶¶ 31-33.) Petitioner has diabetes, which requires ongoing medication and monitoring. (Pet. at 2 ¶ 7.)

On December 19, 2025, an Immigration Judge ("IJ") ordered Petitioner removed. (Pet. at 4 ¶ 34.) Petitioner has moved to reopen his immigration case. (Pet. at 5 ¶ 25.)

On April 24, 2026, ICE detained Petitioner at the airport while he was travelling for work. (Pet. at 5 ¶ 36.) Petitioner was detained without any notice, hearing, or individualized custody determination. (Pet. at 5 ¶ 40.) There is no evidence that he has been provided with a bond hearing either before or after his arrest.

**IV. DISCUSSION**

To the extent Respondents argue that the Petition fails to allege sufficient facts or argument to demonstrate entitlement to relief, the Court disagrees. The Petition argues:

> 47. Petitioner was detained without any meaningful individualized custody determination.
>
> 48. The Fifth Amendment requires notice and an opportunity to be heard before deprivation of liberty. See Mathews v. Eldridge, 424 U.S. 319 (1976).
>
> 49. ICE failed to provide any procedural safeguards prior to detaining Petitioner.
>
> 50. Courts in this District have held that failure to provide a meaningful custody determination prior to detention violates due process.

(Pet. at 6 ¶¶ 47-52.) Ground 2 of the Petition alleges a violation of "Fifth Amendment Due Process," and the Petition seeks immediate release from custody. (Pet. at 7-9.) These allegations are sufficient to state a claim for a violation of due process.

**A. Legal Standard.**

Under the Fifth Amendment Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**B. Analysis.**

**1. Liberty Interest and Private Interest Affected.**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). District courts in this circuit have routinely held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2,

2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). Petitioner also has a substantial private interest in remaining out of custody because that "would allow him to care for and continue to provide for his family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6.

**2. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.**

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Although neither party has provided specific facts about when or why Petitioner was released from custody while his removal case was pending, such a release means DHS necessarily determined that he was not a danger to the community or flight risk. See generally 8 U.S.C. § 1226(a) (providing that DHS may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" or may release them on bond or conditional parole); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Respondent has never explained—either to Petitioner at the time of his arrest or in the present proceedings—what factual basis ICE has (if any) for changing

that determination. There is no evidence, for example, that Petitioner violated the conditions of his release. See, e.g., Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *10 ("In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *5 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record.").

A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

**3. Countervailing Government Interest.**

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (same). Moreover, in immigration court, custody hearings are routine and impose a minimal cost. See Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *11; Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). In the Court's

experience, DHS is routinely able to comply with court orders requiring such a hearing be held within seven days.

Accordingly, Petitioner is entitled to relief on Ground 2 of the Petition.

**4. Appropriate Relief is Release, Not a Post-Deprivation Hearing.**

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless. The government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy).[2] In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL

[2] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

931143, at *4 (granting release and enjoining re-detention “unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention”); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention “unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner’s re-detention”).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 2 of the Petition is **granted**, and the other grounds in the Petition are dismissed as moot.[3]
2. Respondents shall immediately release Petitioner from custody. If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.
3. Respondents shall not re-detain Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that his physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: May 13, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

[3] To the extent Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

# Exhibit G

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

LEVON TONAPETYAN,

Petitioner,

v.

TODD LYONS, et al.,

Respondents.

No. 5:26-cv-02512-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I. SUMMARY

Petitioner Levon Tonapetyan ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at an immigration detention facility in this district. In this habeas action, Petitioner challenges the legality of his re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on May 5, 2026—without notice, without a hearing, and without any individualized

determination that detention was warranted—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing at which the Government must justify the need to detain him.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Armenia. (Dkt. No. 8-1 at 2.) Petitioner entered the United States without inspection and was encountered by United States Customs and Border Patrol ("USCBP") on February 17, 2024. (Dkt. No. 8-1 at 4.) On that same date, USCBP served Petitioner with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.)

Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Petitioner represents that during this time he has maintained gainful employment at a bakery and is the sole financial provider for his household. (Dkt. No. 1 at 2.)

Petitioner was arrested on or about April 29, 2026, for violation of California Penal Code § 273.5(A), felony infliction of corporal injury on a spouse/cohabitant. (Dkt. No. 8-1 at 4.) Following Petitioner's arrest, ICE's Pacific Enforcement Response Center ("PERC") lodged an Immigration Detainer with the Glendale Police Department. *Id.* The Glendale Police Department declined to honor the Immigration Detainer and subsequently released Petitioner into the community. *Id.* Petitioner's wife attests that she did not call the police, she did not make a complaint in relation to the incident, and she does not consider Petitioner to be a danger. (Dkt. No. 1 at 22.) Petitioner represents that he has no criminal convictions, and no criminal charges have

been filed as a result of his April 29, 2026, arrest. (Dkt. No. 1 at 4 and Dkt. No. 10.)

On May 5, 2026, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) Petitioner asserts that following his arrest he has not received a hearing or any individualized determination as to whether his detention is necessary. (Dkt. No. 9 at 2-3.) Petitioner remains at the immigration detention facility as of the filing of the instant Petition. (Dkt. No. 1 at 13.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on June 11, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on June 19, 2026. (Dkt. No. 8.) Petitioner filed his Reply ("Reply") on June 22, 2026. (Dkt. No. 9.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III. DISCUSSION

Petitioner argues that his re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked his liberty without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether he posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1225(b) during his removal proceedings because he was classified as an "arriving alien" during his initial inspection and was found inadmissible for lack of valid documentation. (Dkt. No. 8 at 4.) Respondents further contend that this Court should deny the Petition because Petitioner has not shown that Respondents lacked authority to detain him or that he is entitled to immediate

release. (Dkt. No. 8 at 4-5.)

**A. The Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id*. (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Is Governed By 8 U.S.C. § 1226(a).**

Respondents assert that Petitioner's detention is governed under 8 U.S.C. § 1225(b)(1) because he "was classified as an 'arriving alien' during his initial inspection and was found inadmissible for lack of valid documentation." (Dkt. No. 8 at 4.)

For the reasons set forth below, having reviewed the record, the Court finds that Petitioner had previously been inspected, admitted, and placed in removal proceedings pursuant to 8 U.S.C. § 1226(a) at the time of his May 5, 2026, re-detention. Petitioner has a liberty interest and thus may not be detained without adequate constitutional protections.

Section 1226(a) applies to a noncitizen who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). In *Jennings v. Rodriguez*, the Supreme Court articulated its understanding of the differentiation between §§ 1225 and 1226. *Jennings v.*

*Rodriguez*, 583 U.S. 281, 289 (2018). "Jennings held the Government may 'detain certain [noncitizens] seeking admission into the country' under § 1225(b) while § 1226 'authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1101 (C.D. Cal. 2025), judgment entered sub nom. *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) (quoting *Jennings*, 583 U.S. at 289).

Respondents do not dispute, and the documents in Respondents' evidentiary submission before the Court demonstrate that Petitioner was previously encountered by USCBP on February 17, 2024, and released on parole pending the outcome of his removal proceedings. (Dkt. No. 8-1 at 2.) Respondents correctly note that the express language of § 1225(b)(1)(A)(ii) determines that the statute applies to a noncitizen "who is *arriving* in the United States." (emphasis added). (Dkt. No. 8 at 3.) Respondents cite to no authority to support the notion that Petitioner's classification as an "arriving alien" during his initial inspection on February 17, 2024, somehow extinguishes his prior admission on parole, and the fact that he has been residing in the United States for over two (2 years) pending the outcome of his removal proceedings. On the record before the Court, Respondents have failed to demonstrate how Petitioner could plausibly be classified a noncitizen "arriving in the United States" or an "applicant for admission" under the language of § 1225, where he has been residing in the United States for over two (2 years) and has previously been admitted into the country on parole.

As such, consistent with the reasoning in *Jennings,* the express language of the Immigration and Nationality Act (the "INA"), and other courts in this district, the Court finds that Petitioner was a noncitizen already in the country pending the outcome of his removal proceedings at the time of his sudden re-detention on May 5, 2026. Therefore, Petitioner's detention is governed under 8

Case 5:26-cv-05271-PD Document 1 Filed 09/11/26 Page 67 of 135 Page ID #:167

U.S.C. § 1226(a), and his liberty interest may not be revoked absent the constitutional protections afforded to noncitizens detained pursuant to this section.

**C. Respondents' Deprivation of Petitioner's Liberty Without Notice, a Hearing, or Any Individualized Determination that his Detention is Warranted Violates Due Process.**

Petitioner argues that his sudden re-detention without notice, without a hearing, and without any individualized determination that detention was warranted—after more than two years of residing freely in the community following his release on parole by USCBP—violates the Fifth Amendment's guarantee of due process.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91.

When USCBP paroled Petitioner into the United States upon their initial encounter on February 17, 2024 (Dkt. No. 8-1 at 2), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.

Case 5:26-cv-05271-PD Document 12 Filed 09/17/26 Page 7 of 135 Page ID #:168

424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his sudden re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and

Case 5:26-cv-02521-AYP Document 12 Filed 09/11/26 Page 8 of 15 Page ID #169

probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts he lived free from physical restraint for over (2) years, he has maintained gainful employment at a bakery, and he is the sole financial provider for his household. (Dkt. No. 1 at 2.) Petitioner further contends that he has no criminal convictions, and no criminal charges had been filed against him at the time of his re-detention on May 5, 2026. (Dkt. No. 1 at 4 and Dkt. No. 10.) While Petitioner remained subject to the conditions of his parole during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025)

(quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to provide Petitioner with adequate pre-deprivation process creates a significant risk of erroneous deprivation. Respondents provided no notice, no pre-deprivation hearing, and no opportunity to contest whether he posed a flight risk or a danger to the community. (Dkt. No. 9 at 2-3).

The procedure employed here creates a substantial risk of error. Petitioner was suddenly arrested as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention at a routine appointment without prior notice, likewise concluded

Case 5:25-cv-02251-DAYP Document 1 Filed 09/11/25 Page 10 of 15 Page ID #:71

that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

The record indicates that upon their initial encounter with Petitioner, USCBP served him with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.) Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Yet despite Petitioner's more than two (2) years of residence, maintaining gainful employment and residing freely in the community, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who the Government has previously found capable of residing safely in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is

minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of his re-arrest. Under

*Mathews*, the Government's interest in bypassing pre-deprivation process in these circumstances is minimal.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on May 5, 2026, without adequate pre-deprivation process, violated due process and that he should be released forthwith.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Levon Tonapetyan's (A#244-401-241) immediate release and restoration of liberty to the conditions existing at the time of his detention on May 5, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be

provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: July 21, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

# Exhibit H

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| MILENA APERYAN,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | No. 5:26-cv-00699-WLH-AYP<br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I. SUMMARY

Petitioner Milena Aperyan filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for injunctive relief. Ms. Aperyan is currently in the custody of the Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility. Immigration authorities apprehended the Petitioner in 2024 after she entered the United States and she has resided in the United States since her entry on September 19, 2024. On September 20, 2024, Ms. Aperyan was deemed subject to removal under INA 212(a)(7)(A)(i) and has remained in compliance with her supervision conditions since that time. (Dkt. No. 1 at 12.) Petitioner is in removal proceedings but does not have a final order of removal. (Dkt. No. 1 at 2; Dkt. No. 15 at 8–9.)

In this habeas action, Ms. Aperyan challenges the lawfulness of her detention by ICE, pursuant to § 1126 and *Bautista*, the Due Process Clause, and

the Administrative Procedures Act ("APA"). The Petition also includes an application for preliminary relief as a temporary restraining order or preliminary injunction, requesting the same relief as in the Petition. Petitioner seeks immediate release based on compelling humanitarian considerations arising from her role as the primary caregiver of her disabled infant son.

Following several recent decisions in this District, the Court finds that Petitioner's sudden detention—without any meaningful pre-or post-deprivation process—violates due process. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner Milena Aperyan is a 21-year-old native and citizen of Armenia. (Dkt. No. 1 at 6.) Petitioner was arrested by immigration officers at the port of entry in Otay Mesa, California, on September 19, 2024. (Dkt. No. 15, at 8.) She entered the United States, as an "asylum-seeking noncitizen," (Dkt. No. 1 at 2), on September 19, 2024, and was apprehended by immigration authorities that same day (Dkt. No. 15, at 2.). On September 20, 2024, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging Ms. Aperyan as subject to removal under INA section 212(a)(7)(A)(i) (codified in 8 U.S.C. § 1182(a)(7)(A)(i)) for entering as an applicant for admission who is not in possession of valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document.[1] (Dkt. No. 1 at 8.) Ms. Aperyan was released

[1] Petitioner also claims the Department charged her as "an alien present in the United States without having been admitted or paroled" pursuant to INA §212(a)(6)(A)(i). However, the Petition and subsequent NTA evidence submitted by the Respondents do not include that charge. Thus, the Court will proceed considering only the INA §212(a)(7)(A)(i) charge.

from custody subject to supervision under Immigration and Customs Enforcement's ("ICE's") Non-Detained/Alternatives to Detention Unit ("ND/ATD"), which included regular reporting to ICE. (Dkt. No 15, at 8.) Ms. Aperyan was ordered to appear at a future hearing before an Immigration Judge ("IJ") scheduled for May 6, 2026, at 1:00 PM. *Id*. at 14.

From her time of entry in September 2024 until January this year, Petitioner claims she has remained in compliance with her supervision conditions. (Dkt. No. 1.) On January 9, 2026, pursuant to the conditions of her release, Petitioner appeared as instructed for a routine check-in with the ICE Alternatives to Detention Unit in Los Angeles, California. (Dkt. No. 1 at 2; Dkt. No 15, at 8.) At the check-in, she was issued a Form I-213[2] (Record of Deportable/Inadmissible Alien) on January 9, 2026, alleging "numerous violations" of her release. (Dkt. No. 15, Ex. B.) Petitioner was arrested by ICE Enforcement and Removal Operations officers. *Id*. Petitioner was not given any specifics or notice of what the violations were before the time of detention. (Dkt. No. 1.) She was then transferred to the Adelanto Detention Facility. *Id*. at 2. Until her re-detention, Petitioner had been out of custody for a year and a half. *Id*. At the time of her arrest and re-detention, she was the primary caretaker of a then fifteen-month-old disabled infant child. *Id*. at 9.

The Government submitted supplemental evidence at the request of the Court. (Dkt. No. 15.) It submitted Form I-831 (Record of

[2] Form I-213, Record of Deportable/Inadmissible Alien, provides the basis to support DHS's position that a person should be removed from the United States. It captures a range of information regarding a noncitizen apprehended by DHS to support the factual allegations and charge(s) of removability contained in the NTA. This includes biographic information, possible criminal records, any history of apprehension and detention by immigration authorities, and other relevant information. U.S. DEP'T OF JUST., *Descriptions of Forms and Supporting Documents*, https://www.justice.gov/d9/2024-09/02._sept_24_descriptions_of_forms_and_supporting_documents.pdf.

Deportable/Inadmissible Alien) dated January 9, 2026, which states that Petitioner had a negative result for National Crime Information Center ("NCIC") check and was thus not compliant with her ATD release conditions because of "numerous violations while under the ISAP program." *Id.* at 8. This finding was dated the same day of Petitioner's re-detention. *Id.*

Petitioner disputes that she has "numerous violations under the ISAP program." In her Petition, Ms. Aperyan argues that she has "complied with immigration reporting requirements prior to detention." (Dkt. No. 1 at 12, 32 ¶52.) In her Reply to the Supplemental Evidence, Petitioner argues that the government has not identified the dates of the alleged missed appointments, how many appointments were missed, what notice was sent and whether appoints were later rescheduled or excused. (Dkt. No. 18 at 7.) Petitioner further argues that she was never given a reason for her detention, or an opportunity to respond to the reasons for her detention. *Id.* Further, Petitioner argues that a missed appointment would not support the government's decision to re-detain her as it does not establish she is a flight risk. *Id.*

Petitioner filed the instant habeas petition on February 13, 2026. (Dkt. No. 1.) Respondents filed their Answer on March 3, 2026. (Dkt. No. 9.) Petitioner filed a Reply on March 11, 2026. (Dkt. No. 12.) The parties appeared for a hearing on March 20, 2026. (Dkt. No. 14.) Parties submitted supplemental briefing. (Dkt. Nos. 15, 18.) Both parties have consented to proceed before the Magistrate Judge. (Dkt. Nos. 16, 17.)

## III. DISCUSSION

Petitioner argues that her ongoing confinement violates the INA, the APA and the Fifth Amendment due process. The Respondents argue the Court lacks Jurisdiction under 8 U.S.C. § 1252 and Petitioner is not entitled to a bond hearing under 8 U.S.C. § 1226(a).

**A. The Court Does Not Lack Subject Matter Jurisdiction.**

The Court begins by addressing Respondents' argument that the federal courts lack subject matter jurisdiction over Petitioner's habeas claims.

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001)). Petitioner here advances a classic habeas claim—that her confinement by federal immigration authorities violates the Due Process Clause and the APA.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through two provisions of the immigration laws, 8 U.S.C. §§ 1252(g) and 1252(b)(9). (Dkt. No. 9 at 5–9.) However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g.*, *Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1–2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015, 1019 (C.D. Cal. 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . " 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of*

*California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that Petitioner's claims fall within one of the three listed actions because his "detention arises from the decision to *commence* such proceedings against him." (Dkt. No. 9 at 5–6.) (emphasis added). But the Supreme Court has refused to "interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed Section 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge his detention, not the Government's "prosecutorial discretion" to "commence" removal proceedings. As such, Section 1252(g) does not apply.

Nor does Section 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken ... to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of Section 1252(g), the Supreme Court has rejected an "expansive interpretation of" Section 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* Accordingly, the Court has twice held that Section 1252(b)(9) does not apply to

noncitizens' claims challenging their detention without a bond hearing. *Id.*; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Petitioner's claims—like those at issue in *Jennings* and *Preap*—do not seek review of an order of removal or challenge "the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]." *Preap*, 586 U.S. at 402. Accordingly, Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that her ongoing confinement violates due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Answer. (Dkt. No. 9.) Accordingly, the Court construes Respondents' failure to address Petitioner's due process claim as a concession. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). In the interest of being thorough, the Court will still analyze the merits of Petitioner's Due Process claim.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The Fifth Amendment provides that "[n]o person shall…be deprived of…liberty…without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States,

"including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–1033(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d at 1032–1033 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that procedural due process principles prohibit the Government from re-detaining her without adequate pre-deprivation process or a material intervening change in circumstances.

In reaching this conclusion, the Court is guided by the analysis in a decision by District Judge Mark Scarsi in *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). There, ICE

detained the petitioner, who had been paroled into the United States a decade earlier, when she appeared as instructed for an appointment with United States Citizenship and Immigration Services. As here, ICE did not provide the petitioner notice or a hearing before detaining her. And as here, the petitioner had complied with her release conditions throughout her time on parole. Judge Scarsi found that the petitioner's detention violated her due process rights and issued a temporary restraining order requiring the petitioner's release and preventing her re-detention without a pre-deprivation hearing. *Id.* at *3; *see Cruz v. Lyons*, No. 25-CV-02879, 2025 WL 3443146 (C.D. Cal. Dec. 1, 2025) (granting preliminary injunction a month later). *See also Meneses v. Santacruz*, No. 2:25-cv-11206-MCS-PVC, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025) (granting preliminary injunction requiring release of noncitizen based on substantially similar analysis).

As in *Cruz*, the Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line-test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

**1. Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her settled life out of custody. Petitioner has lived in the United States for approximately one and a half years, during which time she has served as the primary caregiver to her disabled infant child and developed ties with her family and community. (Dkt. No. 1 at 31.) While Petitioner remained subject to supervision during this time, "a person who is in

fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for approximately a year and half before her recent re-detention. (Dkt. No. 1 at 2.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has been the primary caretaker of a disabled fifteen-month-old infant child, has a stable residence with family support, and deepened her connections with her family and communities in the United States. (*See* Dkt. No. 1 at 31, Exhs. C, E.) (describing Petitioner's son's disabilities and how she is the primary caregiver, as well as connections with her community and church in the United States while released on supervision). While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf*

*v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g., Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects the Petitioner's substantial liberty interest in maintaining her freedom from confinement.

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz v. Lyons,* No. 25-CV-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S.

at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 25-CV-02198, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released under ATD. (Dkt. No. 15 at 8.) "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The risk of a wrongful deprivation is especially high here given evidence that Petitioner has no criminal record, has argued her compliance with the terms of her parole, and has maintained required contacts with the federal government, including the one that precipitated her detention. (Dkt. No.1; Dkt. No. 15 at 7–9.) Since her release, Petitioner has not given any reason to think that the Government's determination was in error. Though the government alleges a vague statement that she has "numerous violations while under the ISAP program," it provides no documentation as to what those alleged violations were, when they occurred and what notice was given to Petitioner. An ISAP violation can be as miniscule as a missed app prompt or as substantial as a new criminal arrest. Given that Petitioner was picked up at a routine ICE check-in, the record is insufficient to show she was not compliant with her ATD release

conditions. (Dkt. No. 15 at 8.) Petitioner argues she has complied with her conditions of supervision, including by reporting for regular check-ins with ICE, and maintaining a stable life with her family, including caring for a disabled child. (Dkt. No. 1.)

The Court concludes that there is a high risk that the lack of pre-deprivation process—that is, notice of any alleged release violations and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

**3. Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz v. Lyons*, 25-cv-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine…" *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is

minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process and that she should be released forthwith.

Finally, the Court turns to the question of exactly what process is due before the Government may re-detain Petitioner. It is well-established that the Due Process Clause usually "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Petitioner specifies the "kind of" hearing she believes is warranted before she may be re-detained: "a meaningful, individualized custody determination before a neutral decisionmaker where liberty interests are at stake. Such a determination must assess whether continued detention is actually necessary to mitigate flight risk or danger to the community." (Dkt. No. 1 at 32 ¶53.) *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that due process requires the government to justify prolonged immigration detention of certain noncitizens by "clear and convincing evidence" that an alien is a flight risk or a danger to the community). Here, the Petitioner was re-detained on January 9, 2026, when she reported as instructed for a supervision check-in as per her reporting requirements—the same day the government provided Form I-213 indicating there were "numerous violations" of her release conditions. (Dkt. No. 1 at 2; Dkt. No. 15 at 8.) Providing a document on the same day of detention is insufficient pre-deprivation notice to provide a meaningful opportunity to respond. Ms. Aperyan did not receive adequate notice of this finding and had no opportunity to meaningfully respond prior to her detention. Moreover, Respondents did not address the appropriate procedures for a re-detention. Because Respondents do not provide any reason to reject Petitioner's position, and it is consistent with *Singh*, Petitioner's requested relief is appropriate.

Accordingly, the Court hereby orders Petitioner released from detention forthwith and the Respondents are hereby prevented from re-detaining the Petitioner. If the Respondents are to re-detain her, Petitioner must be provided adequate pre-deprivation notice and a hearing at which the Government must justify the need to confine her.

**C. Petitioner's Remaining Claims**

Because the Court concludes that Petitioner is entitled to release on due process grounds, it declines to address her alternative arguments including whether her detention violates § 1126 and *Bautista*, and the APA. The Court does conclude—as it is undisputed that Petitioner applied for admission through the border with Mexico as an asylum-seeking noncitizen who was not in possession of a valid entry document and is charged with INA §212(a)(7)(A)(i) (codified as 8 U.S.C. § 1182(a)(7)(A)(i)), and detained under 8 U.S.C. section 1225(b)—she is not entitled to a bond hearing under § 1225(b).

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release along with her personal belongings, subject to appropriate conditions of supervision, and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine her; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least 20 days of notice prior to Petitioner being

Case 5:26-cv-00779-PD Document 15 Filed 03/27/26 Page 16 of 16 Page ID #:91

removed from this jurisdiction.

IT IS SO ORDERED.

DATED: March 27, 2026

*/s/ Anna Y. Park*

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

# Exhibit I

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BORIS ASATRYAN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | Case No. 5:26-cv-01895-MBK<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS |

Petitioner Boris Asatryan is an immigration detainee in custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Asatryan is a native of Armenia who was paroled into the United States approximately three years ago and has remained in compliance with his supervision conditions since that time. Mr. Asatryan was recently re-detained by Immigration and Customs Enforcement ("ICE"). In this habeas action, Mr. Asatryan challenges his re-detention under the Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedures Act.

Following several recent decisions in this District, the Court finds that Petitioner's sudden re-detention—without any meaningful pre-deprivation

notice or an opportunity to be heard—violates due process. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Mr. Asatryan's release and preventing his re-detention absent pre-deprivation notice and a hearing.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Asatryan is a native and citizen of Armenia. Dkt. 1 at 2. He entered the United States at the San Ysidro Port of Entry on February 25, 2023, and was subsequently released into the United States shortly thereafter. *Id.* at 6, 19-22. Since that time, Petitioner has resided in the United States continuously and complied with all the conditions of his release. *Id.* at 6. Mr. Asatryan lives with his wife and two children, and has established strong family and community ties. *Id*. Petitioner suffers from serious medical conditions, including a prior heart attack requiring two stents and ongoing medication, and limited mobility due to a shortened Achilles tendon. *Id.* at 7. Petitioner's wife serves as his primary caregiver and assists with his daily medical and physical needs. *Id.*

On April 8, 2026, Mr. Asatryan was taken into custody by ICE without prior notice or any meaningful individualized custody determination. *Id.* He has not received a bond hearing or any other opportunity to challenge his detention before a neutral decisionmaker. *Id.* While in ICE custody, Petitioner experienced a medical emergency during which he fainted and became

unresponsive, requiring hospitalization for two days prior to his transfer to the Adelanto Detention Facility. *Id.* at 3.

Petitioner's removal proceedings are ongoing. *Id.* at 4. He is not subject to a final order of removal. *Id.*

On April 16, 2026, Petitioner Asatryan filed the instant habeas Petition. Dkt. 1. Petitioner advances six claims: (1) Petitioner's re-detention violates procedural due process under the Fifth Amendment because he has been re-detained "without a prompt and meaningful custody hearing before a neutral decisionmaker" ( *Id.* at 8); (2) Petitioner's continued detention violates substantive due process because it is "excessive and not reasonably related to any legitimate government purpose" (*Id.* at 9); (3) Petitioner's re-detention without process is "an arbitrary and unconstitutional deprivation of liberty" (*Id.*); (4) Petitioner's re-detention violates the Immigration and Nationality Act (*Id.*); (5) Petitioner's re-detention violates the Administrative Procedure Act (*Id.* at 9-10); and (6) the Court may issue the writ pursuant to the All Writs Act (*Id.* at 10).

On April 16, 2026, the Court issued Notice of General Order 26-05 and a Briefing Schedule. Dkt. 5. On April 23, 2026, Respondents filed a response to the Petition stating that "Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. §1225(b)(1)," but otherwise not challenging the Petition. Dkt. 7. Mr. Asatryan filed a reply on April 24, 2026. Dkt. 8.

## II. DISCUSSION

Petitioner argues that his ongoing confinement violates substantive due process, procedural due process, the INA, and the APA. Consistent with recent decisions by this district and others, the Court finds that Petitioner's re-detention—without notice or a meaningful opportunity to be heard—violates

due process. In light of that finding and Respondent's lack of any meaningful opposition to the Petition, the Court will grant the Petition, order Petitioner's release, and prevent his re-detention absent pre-deprivation notice and a hearing.

This Court has previously concluded that the Government violates procedural due process by re-detaining a noncitizen released on parole without pre-deprivation notice or a hearing. *See Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026). Because Respondents do not contest the merits of Petitioner's claims, and the Court has already addressed them in *Yataco*, the Court will only briefly address why due process principles support granting the Petition

The Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. While DHS had released Mr. Asatryan on parole and subject to conditions, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable— has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal.

Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

With respect to the second *Mathews* factor, "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, Dkt. 12 at 7 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Nothing in the record suggests that Petitioner is a flight risk or danger. His initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Since that time, Mr. Asatryan has complied with the conditions of his release and appeared for ICE check-ins. Based on the record, the Court concludes that there is a high risk that a lack of pre-deprivation process—that is, notice and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has likely already resulted in Petitioner's unnecessary detention.

With respect to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976,

994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine ...." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

In sum, the Court finds that all three *Mathews* factors favor Petitioner. Accordingly, the Court finds that Petitioner's detention without pre-deprivation notice or a hearing violates due process.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to the conditions of his prior release on parole, and preventing his re-detention absent notice and a pre-deprivation hearing at which the Government must justify his detention by clear and convincing evidence; (3) Respondents shall file a status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from custody.

Dated: April 24, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

# Exhibit J

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

| | |
|---|---|
| AIDANA YERKEBAYEVA,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | Case No. EDCV 26-3840-AS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

On July 10, 2026, Aidana Yerkebayeva (A# 244-067-886) ("Petitioner"), who is represented by counsel and is an immigration detainee in the custody of United States Immigration and Customs Enforcement ("ICE") at the Adelanto ICE Processing Center in Adelanto, California, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") claiming that Respondents violated her Fifth Amendment due process rights by re-detaining her on July 6, 2026, without prior hearing or a hearing, after she had spent more than three years on supervised release. (Dkt. No. 1). She seeks immediate release and an injunction to prevent

Respondents from re-detaining her without a prior hearing before a neutral decisionmaker where the government bears the burden to prove by clear and convincing evidence that she is a flight risk or danger to the community. (Id. at 42-43).

On July 20, 2026, Respondents filed a very brief Response to the Petition stating that Petitioner is entitled, at most, to a bond hearing before an immigration judge under 8 U.S.C. § 1226(a). (Dkt. No. 8). Respondents note that Petitioner "was recently arrested for theft," but they provide no other facts or explanation for why this would justify her current detention. (Id. at 1). Petitioner filed a Reply in support of the Petition on July 21, 2026. (Dkt. No. 10).

For the reasons stated below, the Petition is GRANTED; Respondents are ORDERED to release Petitioner immediately from immigration detention under the same conditions to which she was subject prior to her current detention; and Respondents are further ENJOINED and RESTRAINED from re-detaining Petitioner without providing her with notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.[1]

[1] The parties have consented to proceed before the undersigned United States Magistrate Judge. (See Dkt. Nos. 4-6, 9).

Case 5:26-cv-03527-ASP Document 1 Filed 07/11/26 Page 3 of 15 Page ID #:65

**BACKGROUND**

Petitioner is a native and citizen of Kazakhstan who entered the United States on June 6, 2023, through the port of entry at Hidalgo, Texas, after presenting herself to United States Customs and Border Protection officers for inspection. (Petition ¶¶ 3-4, 32-33, Ex. B). She was issued a notice to appear charging her as removable under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and was released on supervision. (Petition ¶¶ 4, 34-35, 40, Ex. B). She has since attended every scheduled ICE appointment, remained at her known residence, maintained communication with immigration authorities, fully participated in her pending immigration proceedings, and complied with all the conditions of her release. (Id. ¶¶ 5, 43-50). Her removal proceedings remain pending, and no final order of removal has been issued. (Id. ¶¶ 7, 36-38).

On July 3, 2026, Petitioner "became involved in a minor incident" as a result of which she was arrested and charged with petty theft. (Id. ¶ 54). Petitioner disputes the allegations, and the matter remains pending. (Id. ¶¶ 55-56).

On July 6, 2026, Petitioner appeared for a scheduled ICE appointment and was abruptly taken into ICE custody, without any meaningful notice or meaningful opportunity to be heard. (Id. ¶¶ 9-11, 61-75).

Case 5:26-cv-03527-ASD Document 1 Filed 09/11/26 Page 4 of 35 Page ID #:66

**DISCUSSION**

For the reasons explained below, Petitioner is entitled to release from custody, among other relief, because her re-detention without prior notice and a hearing violated due process.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. The Supreme Court has firmly established that "the Due Process Clause applies to all persons within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 679 (2001); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation omitted)). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. That liberty interest persists even for those who have been previously detained, and who remain subject to "significant constraints on their liberty or over whose liberty the government wields significant discretion." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."). In such circumstances, the government's decision to release an individual from custody creates "an implicit promise,"

Case 5:26-cv-03527-ASP Document 11 Filed 09/11/26 Page 5 of 135 Page ID #:67

upon which that individual may rely, that his liberty "will be revoked only if he fails to live up to the . . . conditions [of release]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Thus, "as numerous courts have held, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Romero v. Kaiser, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022); Jorge M.F. v. Wilkinson, 2021 WL 783561, at *3 (N.D. Cal. March 1, 2021)); see also Pinchi, 792 F. Supp. 3d at 1032; Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025).

Petitioner, having been previously released on her own recognizance, therefore has a protected liberty interest in remaining out of custody. "The constitution typically 'requires some kind of a hearing before the State deprives a person of liberty or property,'" particularly because the loss of liberty "cannot be fully compensated after the fact." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine what process he is due, the Court considers the following three factors from Mathews v. Eldridge, 424 U.S. 319 (1976):

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

Case 5:26-cv-03527-ASP Document 1 Filed 09/11/26 Page 6 of 135 Page ID #:168

> Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As to the first factor, Petitioner's private interest is significant, as she has been living in the United States for more than three years. See Morrissey, 408 U.S. at 482 (a parolee's liberty is "valuable" since it "enables him to do a wide range of things open to persons who have never been convicted of any crime," such as being employed, spending time with family and friends, and "form[ing] the other enduring attachments of normal life").

As to the second factor, the risk of erroneous deprivation of liberty is high if Petitioner is deprived of any custody redetermination hearing or is provided a hearing only after she has been detained. Particularly as Petitioner was previously released upon being found not to pose a flight risk or danger to the community, an arrest without a prompt hearing or other procedural safeguard poses a significant risk of error, with substantial harm. See also Rivera Larios v. Albarran, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." (citing Garcia

Case 5:26-cv-03527-ASPD Document 1 Filed 09/11/26 Page 7 of 135 Page ID #:69

v. Andrews, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Arzate v. Andrews, 2025 WL 2230521, at *5 (E.D. Cal. Aug. 4, 2025))); Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." (citing Zadvydas, 533 U.S. at 690-91)).

This is true notwithstanding the fact that Petitioner was detained by ICE three days after her arrest for petty theft. Even in such circumstances, "[t]he government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing." Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025); see also Kandola v. Warden, Cal. City Det. Facility, 2026 WL 1243464, at *2 (E.D. Cal. May 6, 2026) ("Petitioner's 2025 conviction and re-detention immediately upon release from jail does not diminish [his] liberty interest."); Ortiz v. Warden, Cal. City Corr. Ctr., 2026 WL 1104037, at *1 (E.D. Cal. Apr. 22, 2026) ("While petitioner's misdemeanor conviction may be relevant to a neutral decisionmaker's determination at a bond hearing, it does not eliminate petitioner's due process right to such determination."); Anzor I. v. ICE Field Off. Dir., 2026 WL 787978, at *3 (E.D. Cal. Mar. 20, 2026) ("That Petitioner's detention by ICE occurred immediately upon his release from criminal detention after being sentenced to time served amplifies the significance of his liberty interest."); Navjot S. v. Warden of Golden State Annex Det. Facility, 2026 WL 370140, at *3 (E.D. Cal. Feb. 10, 2026) ("[T]he

Case 5:26-cv-03527-ASPD Document 1 Filed 09/11/26 Page 8 of 35 Page ID #:70

fact that Petitioner has a prior arrest only highlights the necessity of procedural safeguards where a neutral decisionmaker can consider all facts and evidence to determine whether Petitioner's detention is now justified."); Ramirez Tesara v. Wamsley, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.'" (quoting E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025))). Respondents have offered no basis to show that Petitioner's petty-theft arrest justified re-detaining her without any hearing to assess whether detention was needed or even justified. Petitioner has no criminal convictions, and for three years she has complied with all the requirements of her release and attended every scheduled ICE check-in. At the very least, she was entitled to an opportunity to challenge the basis for re-detention.

Furthermore, "there is no countervailing government interest – the third and final Mathews factor – that supports conducting a bond hearing only after [Petitioner] has been detained, rather than in advance thereof." Pinchi, 792 F. Supp. 3d at 1036. Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040. Although "[t]he government may have 'a strong interest' in detaining noncitizens during the pendency of removal proceedings as needed to 'protect[] the public from dangerous criminal aliens,'

Case 5:26-cv-03527-ASD Document 1 Filed 07/11/26 Page 9 of 15 Page ID #:71

or to prevent flight and thereby 'increase the chance that . . . the aliens will be successfully removed,'" Pablo Sequen v. Kaiser, 800 F. Supp. 3d 998, 1013 (N.D. Cal. 2025) (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)), Respondents have not argued that any delay attributable to a pre-deprivation hearing would have risked flight or harm to others. As such, there is no significant government interest in foregoing a pre-detention hearing.

On balance, the Mathews factors show that Petitioner was entitled to notice and a hearing prior to being re-detained. See also Zinermon, 494 U.S. at 127 ("Applying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty." (emphasis in original)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)) (emphasis in original)); Pinchi, 792 F. Supp. 3d at 1036 (Mathews test weighed in favor of requiring pre-detention bond hearing for noncitizen previously released on bond during pendency of removal proceedings); Pablo Sequen, 800 F. Supp. 3d at 1014 (same). Having been deprived of that right, Petitioner is entitled to release from detention. See, e.g., Sompal v. Semaia, 2026 WL 311587, at *2 (C.D. Cal. Feb. 3, 2026) ("[O]rdering a bond hearing without immediate release would not address the harm being done to

Case 2:26-cv-03052 Document 1 Filed 09/11/26 Page 109 of 135 Page ID #:109

Petitioner, who would continue to be held in detention without due process until the bond hearing takes place.”).

**ORDER**

Accordingly, the Court GRANTS the Petition (Dkt. No. 1); ORDERS Respondents to release Petitioner Aidana Yerkebayeva (A# 244-067-886) immediately from immigration detention under the same conditions to which she was subject prior to her current detention; and ENJOINS and RESTRAINS Respondents from re-detaining Petitioner without providing her with notice and a pre-deprivation hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 21, 2026

/s/
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

# Exhibit K

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| VLADIMIR HAMBARDZUYMYAN,<br><br>Petitioner,<br><br>v.<br><br>TODD M. LYONS, et al.,<br><br>Respondents. | Case No. 5:26-cv-02509-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEDURAL HISTORY

On May 11, 2026, petitioner (“Petitioner”), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (“Petition”) (Docket No. 3 at 1-12)[1] with three attached exhibits (id. at 13-59). The Petition alleges the following grounds for habeas relief: (1) “Habeas Corpus – Unconstitutional Civil Detention;” (2) “Violation of Fifth Amendment Procedural Due Process;” (3)

[1] For the parties’ pleadings, the Court cites to the CM/ECF pagination at the top of each page.

Case 2:26-cv-01571-TJH Document 1 Filed 09/21/26 Page 112 of 135 Page ID #:112

"Violation of Substantive Due Process;" and (4) "All Writs Act – Preservation of Jurisdiction." (Petition at 10-12).

On May 19, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 6), Respondents filed an Answer to the Petition ("Answer") (Docket No. 9), with two attached exhibits (Docket No. 9-1).

On May 22, Petitioner filed a Reply.

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND

Petitioner is a 39 or 40 year-old native and citizen of Armenia. (Petition at 2, 5-6, 15). On or about February 23, 2021, Petitioner and his son entered the United States. (Id.; see id. at 19 (the Notice to Appear states that Petitioner entered through the Calexico Port of Entry on February 17, 2021)). At the time of entry, Petitioner was detained near the border for approximately six days and was released into the community with a temporary ankle monitor (which was later removed based on Petitioner's demonstrated compliance). (Id. at 3, 6-7,16).

On an unspecified date (following entry), Petitioner and his son pursued asylum-related relief through the United States Citizenship and Immigration Services (USCIS). (Id. at 2, 6, 16).[2] On December 25, 2022, Petitioner's wife and daughters entered the United States. (Id. at 3).

For years, Petitioner, a married father of three children under 18 years of age, resided peacefully within the community, complied with his immigration obligations, remained available to immigration authorities, and attended appointments and check-ins with Immigration and Customs Enforcement ("ICE").

---

[2] The status of Petitioner's attempted asylum-related relief is unknown.

Case 5:26-cv-02052-TJH-PD Document 11 Filed 09/11/26 Page 113 of 135 Page ID #:113

(Id. at 3, 7, 16).[3] Petitioner worked lawfully pursuant to employment authorization and supported his family by driving for Uber. (Id. at 3, 7, 17). Petitioner has substantial community ties, and he does not present a danger to the community or a flight risk. (Id. at 8).

On May 5, 2026, when Petitioner appeared for a routine, scheduled check-in, he was detained by ICE. (Id. at 3, 7, 16). On May 12, 2025, the Department of Homeland Security issued Petitioner a Notice to Appear, charging Petitioner with removability under Immigration and Nationality Act § 212(a)(7)(A)(i)(I) based on his being an immigrant who, at the time of application for admission into the United States, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (Id. at 2, 6, 15, 19-22).

Petitioner is currently detained at Desert View Annex Detention Facility. (Id. at 2, 4, 6, 16).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

---

[3] In the Answer, Respondents assert that Petitioner had "multiple violations of his release conditions, including a recent arrest for Disorderly Conduct: Intoxicated with Drugs/Alcohol." (Answer at 2, 5, citing Docket No. 9-1 at 3-6 [Record of Deportable/Inadmissible Alien]). Since Respondents do not state (or provide evidence of) Petitioner's release conditions, the Court is unable to find that Petitioner violated his release conditions.

Case 2:26-cv-05271-TPD Document 1 Filed 09/17/26 Page 4 of 10 Page ID #:108

Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

**IV.**

**DISCUSSION**

**A. Petitioner's Second Claim Warrants Habeas Relief.**

As noted above, the second claim in the Petition alleges that Petitioner's detention violates his right to procedural due process under the Fifth Amendment. (Petition at 10-11; see Reply at 2-3).

1. Procedural Due Process.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. All persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," are entitled to protection under this provision of the Constitution. Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Id. at 690; see also United States v. Salerno, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

/ / /

/ / /

exception.”). “Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.” Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

Generally, the Due Process Clause “requires some kind of a hearing *before* the State deprives a person of liberty or property.” Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). In Mathews v. Eldride, 424 U.S. 319 (1976), the Supreme Court established three factors for a court to consider for purposes of determining what process is constitutionally sufficient to protect a liberty interest: The private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Id. at 335; see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that “Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context”); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews “to the context of immigration detention”).

Thus, the Court considers the Mathews factors as applied to Petitioner’s claim.

/ / /

/ / /

/ / /

a. Private Interest

Petitioner has resided in the United States for more than five years following his initial contact and release by immigration officials. During that time, he has lived peacefully within the community, he has developed community ties, he has worked lawfully, and he has complied with his immigration obligations. (Petition at 3, 7-8, 16-17). He sought asylum-related relief. (Id. at 2, 6, 16).

Accordingly, Petitioner's liberty interest in remaining out of custody is protected under the Due Process Clause. See e.g., Cruz v. Lyons, Case No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *3 (C.D. Cal, Nov. 6, 2025) (finding the petitioner had a protectable liberty interest in remaining on supervised immigration release); C.A.R.V. v. Wofford, Case No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *10 (E.D. Cal. Nov. 1, 2025) (finding the petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Pursuant to the holding in Mathews, Petitioner should have been afforded a hearing prior to being detained. Petitioner has a substantial private interest in remaining free from detention, living in his home, engaging in lawful employment and generally participating in the community, all while out of custody. See C.A.R.V., 2025 WL 3059549, at *10 ("As to private interest, during his approximately four years on parole, C.A.R.V. obtained permission to work, pursued gainful employment, and built a relationship with his fiancé and many others in his community. . . . Petitioner has a substantial private interest in being out of custody and his detention denies him that liberty interest."); Pinchi, 792 F. Supp. 3d at 1034-35 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two

years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); Manzanarez v. Bondi, Case No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding that petitioner had a private interest in remaining free from detention where "he was released on his own recognizance for over two years and complied with his [order of release on recognizance] conditions during that time"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

b. Risk of Erroneous Deprivation

The absence of a pre-detention hearing under these circumstances presents an unacceptable risk that the government would erroneously deprive Petitioner of his liberty interest. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. Zadvydas, 533 U.S. at 690-91. The risk of a wrongful deprivation is particularly high here given the evidence that Petitioner was released in 2021. Respondent has not argued that Petitioner poses a risk of flight or a danger to the community. The government clearly did not believe Petitioner to be a risk of flight or a danger to the community when he was released in 2021; otherwise, the government would not have released him. Cf. e.g., Sequen v. Albarran, Case No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 15, 2025); Singh v. Andrews, Case No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025). As noted, ICE has *already determined* that Petitioner does not pose a flight risk or danger to his community when it released

him in 2021. There is no evidence indicating that this decision was erroneous or should otherwise be reassessed.

c. Government Interest

As for the third Mathews factor, "as many other courts have recognized, there is no meaningful countervailing Government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." Cruz, 2025 WL 4051129, at *4 (collecting cases). Here, the government has made a persuasive argument as to why Petitioner should be detained. Moreover, Petitioner was released in 2021. "[T]he Government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lessor bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Moreover, "any fiscal or administrative burden on the additional procedural safeguard of a hearing before neutral adjudicator imposes on the Government is at most minimal'[.]" Sun v. Santa Cruz, Case No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). There are no facts in the instant record which would support a finding that the government's decision in 2021 to release Petitioner was made in error.

Therefore, the Court finds that there is a great risk that the lack of a pre-detention process – a hearing to determine whether Petitioner, in fact, presents a risk of flight or danger to the community – has resulted in his unnecessary detention. See Mourey v. Bowen, Case No. 5:25-cv-03262-WLH (DTB), 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents have offered no reason – much less any compelling reason – as to why the government should be able to detain Petitioner, who has developed a significant liberty interest during his more than four years on release, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

Accordingly, the Court concludes that the government's detention of Petitioner on May 12, 2025, without adequate pre-detention process, when he had previously been released and had been compliant with his release, violated his right to procedural due process under the Fifth Amendment.

Given the violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, Case No. 5:25-cv-KK-DSR, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release on his prior conditions of release. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, Case No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

/ / /

/ / /

For the reasons set forth above, the Petition is GRANTED, and a writ shall issue ordering Petitioner's immediate release from custody.[4]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner from custody, subject to the same conditions (if any) that Petitioner was subject to at the time he was arrested and detained, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: May 27, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court's determination that Petitioner is entitled to habeas relief on the second claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.

# Exhibit L

Case 5:26-cv-03832-MBK Document 1 Filed 07/10/26 Page 12 of 13 Page ID #:28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BULAT MUKHAMEDSALIN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | Case No. 5:26-cv-03832-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Bulat Mukhamedsalin, a citizen of Russia, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Mukhamedsalin was paroled into the United States on July 3, 2023 while he seeks protection under the asylum laws. For the past three years, Mr. Mukhamedsalin has complied with his supervision conditions, obtained a work permit, and supported his wife, children, and grandchildren, all of whom live in the United States.

On July 6, 2026, Immigration and Customs Enforcement ("ICE) arrested him, several days after he was arrested for shoplifting. In this habeas action, Mr. Mukhamedsalin alleges that his detention violates his due process rights under the Fifth Amendment. For the reasons that follow, the Court

concludes that Petitioner's re-detention—without any pre-deprivation process—violates due process. Accordingly, the Court grants the Petition, orders Petitioner's immediate release, and prevent his re-detention absent notice and a hearing where the Government must show changed circumstances justifying his re-detention.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Bulat Mukhamedsalin, a native and citizen of Russia, entered the United States through the San Ysidro Port of Entry on July 3, 2023, after presenting himself to immigration authorities for inspection. Dkt. 1 at 2. DHS thereafter initiated removal proceedings by issuing a Notice to Appear charging him as inadmissible under INA § 212(a)(7)(A)(i)(I). *Id*. at 2, 62-65. DHS subsequently released Petitioner on parole while he seeks protection under the asylum laws. *Id*. at 2.

Following his release, Petitioner has attended his scheduled appointments with ICE and immigration court hearings, and was granted a work permit. *Id*. at 2-3, 7-9. Petitioner's wife, four adult children, and grandchildren all reside in the United States. In a letter submitted in support of the Petition, Petitioner's wife describes him as the "foundation of our family": "He is not only our sole financial provider, but he is also our emotional support, our protector, and the person our entire family depends on every day." Dkt. 1 at 74. Petitioner's detention has caused financial and emotional turmoil for the family, including his grandchildren. *Id*.

Petitioner has had two interactions with the criminal justice system during his time in the United States. On November 22, 2023, Petitioner was arrested for "Aggravated Assault." Dkt. 8-1 at 3. Petitioner states that the arrest stemmed from his "intervention during a dispute involving a female tenant." Dkt. 9 at 2. No criminal charges were ultimately filed in connection

with the incident. *Id*. More recently, on July 3, 2026, Petitioner was arrested for misdemeanor shoplifting under California Penal Code § 459.5(a). *Id*. at 3. However, to date, no charges have been filed against him. *Id*.

On July 6, 2026, Petitioner appeared for his regularly scheduled ICE appointment. ICE agents arrested Petitioner and took him into custody. Dkt. 1 at 10. Petitioner was not provided with advance notice that DHS intended to revoke his release, a meaningful opportunity to context his detention before his liberty was taken away, a pre-deprivation hearing, an opportunity to present evidence demonstrating that continued release remained appropriate, or an individualized written explanation establishing why detention had suddenly become necessary after years of successful supervision. *Id.*

Petitioner filed the instant habeas Petition on July 10, 2026. Dkt. 1. He argues that his detention violates his due process rights under the Fifth Amendment and seeks immediate release from DHS custody. *Id.* at 18-55. On July 13, 2026, the Court issued General Order 26-05 and Briefing Schedule. Dkt. 5. Respondents filed their Answer on July 20, 2026. Dkt. 8. Respondents contend that Petitioner (1) has not demonstrated that the government lacked authority to detain him, (2) is subject to mandatory detention and ineligible for release pursuant to 8 U.S.C. § 1226(c)(1), because of his burglary arrest, and (3) is, at most, entitled to a bond hearing pursuant to *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), should his detention become prolonged. *Id.* at 2-5.

On July 23, 2026, Petitioner filed a Reply. Dkt. 9. Petitioner alleges that Respondent mischaracterized the July 3, 2026 incident and his criminal history. In support of his argument, Petitioner attached (1) his California Notice to Appear dated July 3, 2026, for a violation of California Penal Code § 459.5(a), a misdemeanor; (2) an e-mail from Petitioner's criminal counsel

confirming that the allegation against Petitioner is misdemeanor shoplifting; and (3) a Certificate from the Clerk of Los Angeles Superior Court showing that no cases have been opened against Petitioner. *Id.* at 10, 12, 14, 16.

On July 27, 2026, the Court issued an order authorizing Respondent to file a supplemental brief on or before July 28, 2026, to address Petitioner's factual claims regarding his criminal history. Dkt. 10. Respondent did not file a supplemental brief.

## II. DISCUSSION

The Court begins by addressing Respondents' argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c)(1), and then turns to Petitioner's argument that his re-detention violates due process.

### A. Respondent Has not Shown that Petitioner is Subject to Mandatory Detention

Section 1226(a) is "the default detention statute for noncitizens in removal proceedings." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023). The statute provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Section 1226(c) "carves out a statutory category of aliens who may not be released under § 1226(a)," mandating detention for a noncitizen apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Id.* at 289. In January 2025, the LRA added a new category of persons subject to mandatory detention under §

1226(c): an individual who is "inadmissible" on certain grounds and "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1226(c)(1)(E) (emphasis added).

Respondents argues that Petitioner "has open criminal cases for forced entry burglary and aggravated assault with a weapon" and that he is subject to 8 U.S.C. § 1226(c)(1) based on the burglary charge. Dkt. 8 at 2-4. However, Respondents fail to support these factual assertions. The only evidence that Respondents cite is Petitioner's Form I-213, which states that Petitioner has cases "pending" for a 2023 "Aggravated Assault" charge and a 2026 "Burglary – Forced Entry-Non-Residence." Dkt. 8-1 at 3. While the Ninth Circuit has "long held that 'information on an authenticated immigration form,'" including an I-213, "'is presumed to be reliable,'' that is only the case where there is no "evidence to the contrary presented by the alien." *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022) (quoting *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995)).

Here, Petitioner has presented such contrary evidence. In his reply brief, Petitioner provides a certificate from the Clerk of the Los Angeles Superior Court indicating that no criminal cases have been filed against Petitioner. Dkt. 9 at 16. Petitioner also attaches a Notice to Appear indicating that he was arrested on July 3, 2026, for misdemeanor shoplifting under California Penal Code § 459.5(a). *Id*. at 12. Because Petitioner's evidence was inconsistent with Respondents' position that "has open criminal cases for forced entry burglary and aggravated assault with a weapon," (Dkt. 8 at 2-4),

the Court authorized Respondents to file a supplemental brief to address this inconsistency. Dkt. 10. Respondents declined to file a supplemental brief. The undisputed record therefore establishes that there is no pending case or charges against Petitioner for assault or shoplifting (or burglary). While Petitioner concedes he was arrested and issued a Notice to Appear ("NTA") for shoplifting, court records reflect that no charges have been filed. *See* Cal. Penal Code § 853.9(a)(1) (providing that an NTA properly filed with court "shall constitute a complaint").

Absent evidence that charges are pending against Petitioner, Respondents have not shown that Section 1226(c)(1) applies to Petitioner. The statute applies where a person "is charged with, is arrested for, [or] is convicted of . . . shoplifting." 8 U.S.C. § 1226(c)(1)(E). The statutes use of the present tense indicates that it is only to a person who presently "is arrested" for or "is charged" with shoplifting. "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992); *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2063 (2025) ("To ascertain a statute's temporal reach, this Court has frequently looked to Congress' choice of verb tense.") (cleaned up). For these reasons, courts have found that Section 1226(c)(1)(e) does not apply to individuals who were charged with a qualifying criminal offense in the past. *See Matute v. Jamison*, No. 2:25-cv-07093, 2026 WL 461557, at * 5 (E.D. Pa. Feb. 18, 2026) (citations omitted) (interpreting the LRA's use of the present to mean that it did not include one who was "arrested years ago, even if that arrest never manifested in indictment, because 'the present tense generally does not include the past.'") (quoting *Carr v. United States*, 560 U.S. 438, 448 (2010)); *Hairo v. Crawford*, No. 2:25-cv-704, 2026 WL 286176, at *2 (E.D. Va. Feb. 3, 2026) (relying on present tense construction to find that a petitioner was no longer covered by

the Laken Riley Act, once his criminal charges were dismissed); *Helbrum v. Williams Olson*, No. 4:25-cv-00349-SHL-SBJ, 2025 WL 2840273, at *5-6 (S.D. Iowa Sep. 30, 2025) (same); *Pereira v. Warden*, No. 1:26-cv-01480-DJC-JDP, 2026 WL 1272714, at *1, n.1 (E.D. Cal. May 8, 2026) (same).

This construction is supported by the structure of Section 1226(c)(1)(E), which tracks the progression of a criminal case from arrest, to charge, and finally to conviction. The structure reflects that Congress was concerned with people who the state has decided to prosecute—through a pending arrest or charges—or against whom the state has secured a conviction, rather than people who the state *might* decide to charge in the future. The construction also avoids rendering the term "is convicted" in the statute superfluous because every person convicted of a crime was first charged with it. *See Rueda Torres v. Francis,* No. 25-cv-8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025) (rejecting the respondents' "interpretation that requires mandatory detention following any arrest or charge no matter the ultimate disposition of those charges"; such a reading "would make the words 'is convicted of' superfluous, as no Defendant could possibly proceed to a conviction without first being charged") (cleaned up).

In sum, the Court concludes that Respondents have not shown that Petitioner is subject to mandatory detention under Section 1226(c).

**B. Petitioner's Re-Detention Violates Due Process**

The Court now turns to Petitioner's claim that his re-detention violates procedural due process.

Aside from arguing that Petitioner's detention is mandated by Section 1226(c), Respondents do not address Petitioner's procedural due process claim. Respondents' failure to oppose Petitioner's due process claim is a concession. *See Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D.

Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). In light of Respondents' non-opposition, the Court finds that Petitioner has shown that his re-detention violated procedural due process.

A "two-step analysis" applies to procedural due process claims. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, the Court must determine if Petitioner was deprived of a constitutionally protected interest. *Id.* Second, if such an interest exists, the Court then considers "whether that deprivation was accompanied by sufficient procedural protections." *Id.* To evaluate the adequacy of procedural protections, the Court applies the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976).

**1. Petitioner has a Constitutionally Protected Liberty Interest**

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604

Case 5:26-cv-01571-FPD Document 11 Filed 01/30/26 Page 9 of 13 Page ID #:236

U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Petitioner therefore has a constitutionally protected interest in freedom from incarceration. In addition, Petitioner has been living at large in the United States for the past three years, during which time he has developed significant ties in the United States. As discussed more fully below, Petitioner has a significant liberty interest in maintaining his settled life with his family outside of custody. As such, the Court concludes that Respondents deprived Petitioner of a constitutionally protected liberty interest when they re-detained him.

**2. *Mathews* Balancing Test**

Because Respondents deprived Petitioner of a protected liberty interest, the Court considers "whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

**a. Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. Petitioner has lived in the United States for approximately three years. During this time, he has lived with his wife and helped to support family, including his children and grandchildren.

While Petitioner has remained subject to supervision during this time,

"a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is '"valuable and must be seen as within the protection of the Fourteenth Amendment."' *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

While Petitioner has only resided in the United States for approximately three years, a person can develop meaningful ties in such a relatively short period of time. Even if Petitioner has "a lesser liberty interest" "at the margin" than other noncitizens released pending removal proceedings, "the same important interest is at stake—freedom from prolonged detention" and the potential loss of the important ties that Petitioner has developed in the United States. *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

For these reasons, numerous courts in this District and throughout the country—including the undersigned Magistrate Judge—have found noncitizens paroled into the United States, or released on conditional parole shortly after their entry into the United States, for comparable periods have a significant liberty interest in maintaining their freedom from confinement.

*See Lugos v. Mullin,* No. 5:26-cv-01880-KES, 2026 WL 1250264, at *5 (C.D. Cal. May 1, 2026) ("nearly two years"); *Medrano-Rocha v. Santacruz*, No. 2:26-cv-00404-KK-SSC, 2026 WL 411355, at *3 (C.D. Cal. Jan. 23, 2026) ("nearly three years"); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("approximately three years"). *See also Torres*, 2026 WL 145715, at *5 ("This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.") (collecting cases); *G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–10 (E.D. Cal. 2025) (same).

**b. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of [his] liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner's release reflects the Government's determination that Petitioner

did not present a sufficient danger or flight risk requiring his detention. *See* 8 C.F.R. § 212.5 (permitting release on parole under Section 1182(d)(5)(A) in limited circumstances, “provided the aliens present neither a security risk nor a risk of absconding”)..

There is little reason to believe the Government’s release decision was in error. During his time in the United States, Petitioner has maintained a stable residence and employment, has no criminal history, has proceeded with his immigration case, and reported for all his supervision check-ins and immigration court hearings. While Petitioner has twice been arrested, as discussed above, neither arrested has resulted in charges, much less a conviction. Notably, Respondents do not argue that Petitioner’s arrests (or any other conduct) in the United States establishes that he is a danger or flight risk. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner’s unnecessary detention.

**c. Government Interest**

As to the third *Mathews* factor, “as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing.” *Cruz*, 2025 WL 4051129 at *4 (collecting cases). “[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.” *Hernandez*, 872 F.3d at 994. Additionally, “any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most

"minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

* * *

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process—namely, notice and a hearing—violated due process.

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS that: (1) Judgment be entered granting the Petition as to Petitioner; (2) a writ of habeas corpus be issued requiring Petitioner Bulat Mukhamedsalin's (A# 244-093-652) immediate release and prohibiting his re-detention absent a hearing at which the Government shows material changed circumstances justifying his detention; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: July 30, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I am over the age of eighteen and not a party to this action. My business address is 440 Western Ave. Suite 205 Glendale, CA 91201.

On September 11, 2026 I served the foregoing **PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241), AND DECLARATORY AND INJUNCTIVE RELIEF** on the following by [CM/ECF electronic filing and/or U.S. Mail / Certified Mail / email]:

U.S. Attorney's Office Central
District of California
312 N. Spring Street
Los Angeles, CA 90012

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Facility Director Adelanto East ICE
Processing Center
10400 Rancho Road
Adelanto, CA 92301

Secretary, U.S. Department of
Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528

Acting Director, U.S. Immigration
and Customs Enforcement
500 12th Street SW
Washington, DC 20536

Field Office Director
ICE Enforcement and Removal
Operations – Los Angeles
300 N. Los Angeles Street
Los Angeles, CA 90012

Warden, Adelanto East ICE
Processing Center
10400 Rancho Road
Adelanto, CA 92301

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 11, 2026 at Glendale, CA.
/s/ *Sarah Hacobian*
Sarah Hacobian