UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEGHINE MARTIROSYAN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | Case No. 5:26-cv-05271-PD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**A# 206-913-680** |

Heghine Martirosyan ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. Dkt. No. 1. Pursuant to General Order 26-05, Respondents' answer was due September 21, 2026. *See* Dkt. No. 5. Respondents did not file an answer by that deadline but filed a notice of appearance. Dkt. No. 7. On September 23, 2026, Petitioner filed a notice asking the Court to grant the Petition based on Respondents' failure to respond. Dkt. No. 8. The next day, Respondents filed an answer. Dkt. No. 9. Petitioner then filed a reply. Dkt. No. 10. Though Petitioner asks the Court to ignore Respondents' answer based on their tardy filing, the Court exercises its discretion to consider the answer. Petitioner also filed an ex parte application for a temporary restraining order ("TRO"),

asking the Court to issue a stay preventing her removal to Armenia, which is scheduled on October 10, 2026. Dkt. No. 11.

## I. Background

### A. Procedural History

Petitioner filed this action alleging that she did not have a final order of removal, was paroled into the United States in 2014, had no criminal history or materially changed circumstances, and, on September 8, 2026, was abruptly detained without notice or a pre-deprivation hearing. Petitioner asserted claims under procedural due process and substantive due process, based on the lack of materially changed circumstances justifying her detention.

However, Respondents' answer, which was supported by exhibits,[1] revealed that Petitioner has a final order of removal and asserted that she was detained pursuant to 8 U.S.C. § 1231 and was within the 90-day mandatory detention removal period. Respondents argued that because Petitioner had only been detained for 16 days, she was within the six-month presumptively reasonable period under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Dkt. No. 9.

In reply, Petitioner did not dispute Respondents' factual assertions, or that she is subject to a final removal order. Instead, Petitioner argued that Respondents failed to address the Petition's claim that Petitioner was detained without adequate pre-deprivation process. Dkt. No. 10.

---

[1] Respondents provided a declaration from a deportation officer summarizing Petitioner's immigration history, a copy of Petitioner's removal order dated July 11, 2016, and a May 1, 2026 immigration judge order terminating Petitioner's removal proceedings based on her final removal order. Dkt. Nos. 9-1, 9-2, 9-3.

### B. Petitioner's Immigration History

Based on the information provided by the parties, the Court summarizes Petitioner's immigration background as follows.

Petitioner is a native and citizen of Armenia who entered the United States on November 1, 2014 through the San Ysidro Port of Entry. Dkt. No. 1, Petition ¶¶ 41–42. She was then paroled in the United States pursuant to 8 C.F.R. § 212.5 with reporting requirements. She has resided in the United States ever since and remained outside immigration custody for twelve years. Petitioner has no criminal history. Petitioner is married to a U.S. citizen; they are raising a fifteen-year-old child. Petitioner is involved in a church and has employment authorization valid until January 13, 2030.[2]

On July 11, 2016, Petitioner was ordered removed to Armenia. Dkt. No. 9-1, Palacios Decl. ¶ 5; Dkt. No. 9-2 (Removal Order). The Board of Immigration Appeals ("BIA") dismissed her appeal on June 8, 2017, and the Ninth Circuit dismissed Petitioner's Petition for Review on May 12, 2020. Palacios Decl. ¶ 5. On November 5, 2020, Petitioner filed a motion to reopen her removal proceedings with the BIA. The BIA denied the motion on April 4, 2022, and the Ninth Circuit dismissed Petitioner's Petition for Review on August 30, 2023. *Id.* ¶ 6. Respondents assert she was never previously detained during removal proceedings, and that there is no stay in place preventing her removal. *Id.* ¶ 8.

In October 2021, Petitioner married her U.S. citizen husband. Dkt. No. 1 at 43 (Marriage Certificate). In December 2021, Petitioner's husband filed

---

[2] Attached to the Petition is a letter from Petitioner's pastor and her husband, who writes of the emotional hardship Petitioner's detention has had on their family. Dkt. No. 1 at 41–42.

an I-130 Petition for Alien Relative.[3] *See id.* at 44 (copy of I-130). The Petition was approved on December 8, 2023. *Id.* However, on April 4, 2025, the United States Citizenship and Immigration Services ("USCIS") issued a Notice of Intent to Revoke ("NOIR") the I-130 petition "for failure to have included a request for exemption based on being in removal proceedings." Dkt. No. 9-3 at 1 (IJ order summarizing procedural history). USCIS revoked the approval based on a lack of response to the NOIR; Petitioner appealed that decision, arguing that a response was timely delivered on May 5, 2025. According to Petitioner's husband, the I-130 is pending and Petitioner is scheduled for a biometrics appointment with USCIS on October 9, 2026. Dkt. No. 11 at 45.

On August 15, 2025, Department of Homeland Security ("DHS") issued a new Notice to Appear against Petitioner. Dkt. No. 9-3 at 1.

On May 1, 2026, Petitioner's immigration proceedings were terminated by an immigration judge ("IJ") based on her outstanding removal order from 2016. Dkt. No. 9-3. The IJ noted that "[t]here is no indication that [Petitioner] ever left pursuant to [the] removal order and returned." *Id.* at 1.

On September 8, 2026, Petitioner was detained by immigration authorities; prior to this detention, she was not provided notice or a pre-deprivation hearing before a neutral decisionmaker. Petitioner alleges she was not afforded an opportunity to contest whether there were materially changed circumstances establishing she had become a danger or flight risk. According to Respondents, they took Petitioner into custody to enforce her final removal order. Palacios Decl. ¶ 7.

---

[3] A Form I-130 Petition is filed as a first step for a spouse of a U.S. citizen to obtain lawful permanent resident status. "If the I-130 petition is granted, the beneficiary spouse must file a Form I-485 Application to Register Permanent Residence or Adjust Status to adjust his or her status to lawful permanent resident. 8 U.S.C. § 1255." *Shen v. Martin*, No. CV 21-6244 AS, 2022 WL 1155100, at *1 & n.3 (C.D. Cal. Apr. 18, 2022)

According to Petitioner, on October 2, 2026, ICE served her with a document stating that she may be transferred outside the Central District of California on or after October 10, 2026, for removal to Armenia. Dkt. No. 11 at 40. As of this date, Respondents have not filed a notice of intended removal in this case. *See* Dkt. No. 5 at 2 (General Order 26-05, stating that "[d]uring the pendency of these proceedings, Respondent shall provide at least two court days' notice to the petitioner, petitioner's counsel, and the Court of its intent to remove the petitioner from the Central District of California.").

## II. Discussion

### A. Petitioner is detained under 8 U.S.C. § 1231

Based on the undisputed record, Petitioner is subject to a final order of removal because she was ordered removed in 2016 and her appeal to the BIA was dismissed. The detention of noncitizens subject to final orders of removal is governed by 8 U.S.C. § 1231(a). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Under 8 U.S.C. § 1231, a noncitizen with a final order of removal must be detained for an initial period of 90 days (the "removal period") pending the government's efforts to secure the noncitizen's removal. *See* 8 U.S.C. § 1231(a)(2). According to the statute, the removal period begins on the latest of the following: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B). Here, prong three does not apply because there is no indication that Petitioner was ever detained or confined (except under an immigration process). As for the second prong, there is no evidence that any court has issued a stay of removal for Petitioner. Therefore,

the removal period began to run when Petitioner's removal order became "administratively final."

8 C.F.R. § 1241.1(a) provides that "[a]n order of removal made by the immigration judge at the conclusion of proceedings under [8 U.S.C. § 1229a] shall become final: . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals". Respondents assert that Petitioner's removal order is administratively final, she has been detained for 16 days and is currently within the 90-day removal period. Dkt. No. 9 at 2. However, courts in this Circuit have found that the 90-day removal period begins to run on the date the removal order becomes final, and not when the government decides to detain a noncitizen. *See A.S. v. Noem*, No. 5:26-cv-00316-MWC-DTB, 2026 WL 849279, at *3 (C.D. Cal. Jan. 29, 2026) ("Respondents attempt to recast the 90-day removal period as commencing each time that the government re-detains a petitioner. . . . Not so. The 90-day removal period applies to the first 90 days after a petitioner receives a final order of removal."); *Nakiyaga, v. Semaia, et al.*, No. 5:26-cv-05359-CTS, 2026 WL 2970711, at *4 (C.D. Cal. Oct. 2, 2026) (finding the removal period began on the date the BIA affirmed removal, even though ICE did not detain petitioner until two months later at a check-in); *M.L.G.G. v. Wamsley*, No. 6:25-cv-02012-AA, 2025 WL 3539183, at *3 (D. Or. Dec. 10, 2025) ("[T]he removal period runs from the time the removal order becomes administratively final and not from the time the noncitizen is taken into custody."). Here, Respondents provide no argument explaining why Petitioner is subject to the removal period, other than the fact she has been detained for 16 days.

Therefore, the Court concludes that Petitioner's removal order became final on June 8, 2017, when the BIA dismissed her appeal, and expired 90 days later. Based on the foregoing, the Court concludes that Petitioner is

detained under 8 U.S.C. § 1231 but has now exceeded the 90-day removal period.

There is no evidence that Respondents previously detained or removed Petitioner during the removal period. Section 1231(a)(6) "authorizes further detention if the Government fails to remove the [noncitizen] during those 90 days." *Zadvydas,* 533 U.S. at 682. The statute, however, is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Id.* at 689.

In *Zadvydas*, the Supreme Court recognized a six-month presumptively reasonable period of detention after a noncitizen's removal order becomes final. 533 U.S. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "If removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 699–700.

**B. Analysis**

Here, according to the Declaration of Deportation Officer Lourdes Palacios, "DHS stands ready to enforce [Petitioner's] removal order." Dkt. No. 9-1, Palacios Decl. ¶ 8. Based on the motion for TRO, it appears Petitioner was informed that Respondents are prepared to remove Petitioner to Armenia on October 10, 2026. Petitioner's reply does not dispute Respondents' prospects of removing her but instead argues she was entitled to pre-deprivation process; however, she does not specify what process she was owed

in light of her final removal order. The orders granting release that are attached to the Petition do not involve petitioners who were subject to final removal orders and then detained for the first time in order to effectuate removal. *See* Dkt. No. 1 at 50–134. Petitioner appears to rely on cases where courts applied the due process analysis in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) to find that previously released noncitizens were owed process prior to re-detention. In those cases, the petitioners were released into the United States and then re-detained without a pre-deprivation hearing, while their removal proceedings were still pending. *See Tonapetyan v. Lyons*, No. 5:26-cv-02512-AYP, 2026 WL 2127172 (C.D. Cal. July 21, 2026) (granting release under pre-deprivation due process analysis for noncitizen in removal proceedings released on parole then re-detained); *Yerkebayeva v. Lyons, et al.*, No. 5:26-cv-03840-AS, Dkt. No. 11 at 3 (C.D. Cal.) (same, noting that the petitioner's "removal proceedings remain pending, and no final order of removal has been issued").

Based on the available record, Petitioner was never detained after her removal order became final and was not issued an order of supervision. Instead, she remained released, presumably under the conditions of her 2014 parole. Petitioner's claims for relief under procedural due process and substantive due process are based on the argument that there were no materially changed circumstances showing that her confinement was necessary. Petition at 19–22. However, these claims assumed that she was still in removal proceedings. Since Petitioner was paroled into the United States, she was ordered removed, and the removal order became final. It appears Respondents are now prepared to effectuate her removal. Petitioner has not presented legal authority showing how, in light of these subsequent events, she was entitled to pre-deprivation process, or that her detention does not bear a reasonable relationship to a legitimate governmental purpose.

In sum, Petitioner has not presented a legal basis for release under the facts of this case. To the extent Respondents are unable to effectuate her removal, this Order will be without prejudice to Petitioner challenging her detention under the applicable statutes and regulations governing her detention.

## III. Order

For the foregoing reasons, the Petition is denied. Accordingly, the application for TRO is denied as moot. Dkt. No. 11. Judgment will be entered dismissing the Petition without prejudice.

IT IS SO ORDERED.

DATED: October 7, 2026

Patricia Donahue

Patricia Donahue
United States Magistrate Judge